**STATE of Minnesota, Appellant,**

v.

**Charles Howard McCRAY, II, Respondent.**

**No. A06–857.**

Supreme Court of Minnesota.

July 31, 2008.

John B. Galus, Asst. Atty. General, St. Paul, Janelle Prokopec Kendall, Stearns County Atty., St. Cloud, for Appellant.

Mark D. Nyvold, St. Paul, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Respondent Charles Howard McCray II was charged with first- and second-degree criminal sexual conduct against T.C., the 7–year–old daughter of his girlfriend. But because T.C.'s trial testimony was inconsistent with her pretrial statement regarding penetration, the district court dismissed the first-degree charge. Before closing arguments, the court instructed the jury that the penetration matter had been resolved and that "[n]either the attorneys nor I will address these matters further." During the State's closing argument, however, the prosecutor made several refer-

ences to T.C.'s pretrial statement regarding penetration. McCray argued that these references violated the court's instruction. Although the court did not find that the prosecutor violated the court's order or otherwise committed misconduct, the court nonetheless permitted McCray to address matters pertaining to penetration as a "cure" for any confusion that had been created.

The court of appeals held that the references to penetration during the State's closing argument constituted prosecutorial misconduct, and that this misconduct warranted a new trial. *State v. McCray*, No. A06–857, 2007 WL 2034268, at *1–2 (Minn. App. July 17, 2007). We conclude that the prosecutor did not violate the district court's instruction or otherwise engage in misconduct in this case. Accordingly, we reverse.

In September 2005, McCray was living with his girlfriend, S.C., and her three children. McCray took care of the children while S.C. was working and attending nursing school. Because S.C. had nursing clinicals on Thursday and Friday mornings, McCray was responsible for getting the children ready for school on those days. At some point during September, S.C. noticed changes in the behavior of T.C., her 7–year–old daughter, and began to suspect that T.C. had been sexually abused. On September 24, S.C. asked T.C. whether anyone had ever touched her; T.C. answered, "Yes." During the ensuing conversation, T.C. told S.C. that near the beginning of the school year, McCray asked her to come downstairs to his bedroom, take off her nightgown, and crawl into bed with him. T.C. told S.C. that McCray "touched her privates, and then he put her on top of him, and he was moving her back and forth." T.C. repeated this account during an interview with a police officer later that night. She

also informed the officer that when McCray touched her private parts, he had his hand under her underwear and that "[h]e took his hands and put it inside of me." In response to a later question from the officer, T.C. agreed that McCray had "put his finger inside [her] private part." Although T.C. could not remember the exact date of the incident, she stated that it was "[n]ot so long ago," it was in the morning on a school day, and her mom was at work.

Based on T.C.'s allegations, McCray was charged with one count of first-degree criminal sexual conduct pursuant to Minn. Stat. § 609.342, subd. 1(a) (2006), and one count of second-degree criminal sexual conduct pursuant to Minn.Stat. § 609.343, subd. 1(a) (2006). Both offenses involve sexual conduct in which "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant," but the first-degree offense requires "sexual penetration" while the lesser second-degree offense requires "sexual contact." *Compare* Minn.Stat. § 609.342, subd. 1(a), *with* Minn.Stat. § 609.343, subd. 1(a).

At McCray's trial, a video recording of T.C.'s police interview—during which she indicated that McCray had penetrated her—was introduced into evidence and played for the jury. T.C. also testified that McCray had brought her downstairs, told her to take off her pajamas, put two fingers underneath her underwear, and touched her private part. But when the prosecutor asked whether McCray's fingers touched the inside or outside of her private part, T.C. testified, "They stayed outside." Thus, although T.C.'s trial testimony was generally consistent with her pretrial statement, her testimony was inconsistent with respect to penetration.

Based on this inconsistency, McCray moved for a directed verdict on the first-

degree criminal sexual conduct charge. The district court found that the only evidence of penetration was T.C.'s pretrial police interview, which had been contradicted by her trial testimony, and concluded that the first-degree charge should be dismissed on two alternative grounds: (1) "the State failed to meet its burden under *Ortlepp*";[1] and (2) T.C.'s contradictory statements with respect to penetration "would not sustain a guilty verdict as a matter of law."

Before closing arguments, the prosecutor asked the district court to instruct both attorneys not to address the dismissal of the penetration charge. The prosecutor indicated, however, that both attorneys should be free to address the inconsistencies between T.C.'s pretrial statement and trial testimony with respect to penetration. Defense counsel contended that he should be allowed to argue that the penetration charge was dismissed because the State failed to meet its evidentiary burden on that charge. In response to these arguments, the court stated:

> I will simply tell them that penetration is no longer an issue in the case, that I have resolved that issue as a matter of law, and they are not to speculate about the reasons for my having done so, but that neither party will be needing to prove or disprove that element.

After further discussion about whether the jury should be told that the penetration charge was dismissed, the court stated:

> Here is what we will do: I will craft an instruction previous to argument that will inform the jury that maybe Count 1—maybe I will just mention penetration is no longer going to be presented to them for consideration as a consequence of decisions I had made which turn on legal issues.
>
> If I do that, then I would anticipate that there would be no argument as to the facts or the law as to Count 1. Okay.
>
> * * * *
>
> And so I will give them an instruction which indicates that Count 1 has been dismissed as a matter—for reasons of—by myself for reasons of law, but they are to proceed forward and deliberate on Count 2, and that the attorneys will argue their respective positions relative to that count.

The court ultimately instructed the jury as follows:

> At the beginning of the trial, you were advised that two counts would be given to you for decision. As a matter of law, I have resolved one of these matters: The issue relating to penetration. You are instructed that you are not to speculate about the reasons for this legal determination and that it was made as a pure determination of law and that it is irrelevant to your eventual decision relating to the issues presented to you in this case. Neither the attorneys nor I will address these matters further, and that decision does not concern issues to be determined during your deliberations.

---

1. Although the district court's decision to dismiss the first-degree criminal sexual conduct charge is not before us on this appeal, we note that our decision in *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn.1985), addressed the admissibility of a prior inconsistent statement under the residual "catch-all" exception to the hearsay rule. *See* Minn. R. Evid. 807. But the video recording of T.C.'s police interview appears to have been admitted as substantive evidence pursuant to Minn.Stat. § 595.02 (2004). Because T.C.'s prior statement alleging penetration was not admitted under the residual hearsay exception, it is unclear how the state's failure to satisfy the *Ortlepp* factors could impact the decision of whether to dismiss the first-degree penetration charge.

During the State's closing argument, the prosecutor made several references to T.C.'s pretrial statement to the police officer about penetration. First, while summarizing the evidence presented at trial, the prosecutor recounted T.C.'s interview with the officer, including her statement that " '[Charles] took his hands and [he] put it inside of me.' " Later, while describing T.C.'s trial testimony, the prosecutor again addressed penetration while discussing the inconsistency between the testimony and the pretrial statement:

And then we get to the point where she was asked, "Could you tell me how he touched your private parts? Would you describe that for me?"

She talked about two fingers, but that was as far as she could go. She couldn't talk about what happened after that.

In her [statement] to [the police officer], it was at that point where the two fingers—she was talking about penetration. Well, she couldn't tell you about penetration. But I submit to you that that is not to say that it did not occur. And, in fact, the expert, the expert testified that recantation is not inconsistent with a child sexual abuse.

You saw her when she was talking about what happened to her. The fact that she had difficulty with that fact, with talking about it, does not mean that everything else she said was a lie. Does that make[ ] sense? Does that make sense because she couldn't talk about that, that everything else she said up to that point was not truthful? Or is there a possibility that—I mean, you certainly have the opportunity to apply your own determinations of credibility. That is your job as the jury, and the Court will explain that to you when he instructs you on the law.

But your job will be to determine credibility. Your job is to make all the

judgments in this case. And you can make a judgment that perhaps [the police officer] got it wrong. * * * Perhaps she was never talking about penetration at all in her initial disclosure.

I am not submitting to you that that is the right decision, in any way. But, certainly, it can't mean that everything else she had said is a lie because she simply could not talk about that moment.

Finally, the prosecutor addressed T.C.'s pretrial statement about penetration while discussing her credibility as a witness:

In the safety of the CornerHouse Interview, in the safety of [the police officer's] small office or small room, in which he conducted that interview, you saw her able to talk about what had happened.

At that moment, I submit that the most credible evidence exists about what happened. Here in this courtroom, before a roomful of strangers, she did the best she could. Don't blame her for what she couldn't say. If you are going to blame someone, blame me for not asking the right questions, for not knowing how to communicate with her.

But she did the best she could. She provided details in her disclosure which were consistent with her understanding and in age-appropriate language, and she also provided an interesting demonstration with the dolls, especially in the interview with [the police officer]. You saw how she put the doll and straddled it sitting upwards, and then she immediately placed hands holding the doll and demonstrated the movement back and forth. I submit that that is a high level of detail—a very detailed disclosure.

Does it make common sense that that is something that she would make up? Is that something that she would know about? Does she have a motive to lie?

After the State's closing argument, McCray argued that the prosecutor's discussion of penetration violated the court's instruction. The prosecutor explained that he understood the instruction to prohibit only discussion of the dismissal of the penetration charge, not the inconsistency between T.C.'s pretrial statement and her trial testimony. In response to the parties' arguments, the court stated:

> Part of the confusion could be the result of the instruction that I crafted because, in candor, I was trying to use language that was as neutral as I possibly could.

> I hear [the prosecutor's] point about the motion that he raised and the reason for raising it. I can appreciate why there could have been some misapprehension between his motion and the instruction as I ultimately delivered it, and we didn't talk about it. I crafted it and delivered it.

Based on the blackboard notes prepared by defense counsel, the court observed that it appeared that defense counsel intended to address "hymens and bruising and things like that which all go to penetration" during his closing argument. The court concluded that "the cure for whatever dilemma we have that I created, or that counsel have created, or that we created in combination, is to simply proceed to let [defense counsel] argue based upon the information that he has put in the back of the blackboard." Defense counsel asked whether it was also fair for him to argue as follows: "[Penetration] doesn't even matter any more. You can't even consider that. That is not before you." The court indicated that this argument would be permissible. Finally, after the prosecutor again explained that he never intended to prevent all references to penetration, the court stated, "My fault. You asked for one thing, specifically, and I took

it to the next step. My fault. Not yours. I wasn't clear enough."

The jury subsequently found McCray guilty of second-degree criminal sexual conduct. McCray appealed, arguing that the prosecutor had committed prosecutorial misconduct by discussing penetration during his closing argument. Without analyzing either the district court's instruction or the prosecutor's closing argument, the court of appeals concluded that "[t]he prosecutor's comments * * * violated the district court's instruction, were highly prejudicial, and unfairly permeated the trial." *McCray*, 2007 WL 2034268, at *2. The court of appeals concluded that we had recently "streamlined" the analysis of objected-to prosecutorial misconduct as follows: " 'If the state has engaged in misconduct, the defendant will not be granted a new trial if the misconduct is harmless beyond a reasonable doubt. We will find an error to be harmless beyond a reasonable doubt only if the verdict rendered was surely unattributable to the error.' " *Id.* at *1, *2 (quoting *State v. Mayhorn*, 720 N.W.2d 776, 785 (Minn.2006) (quoting *State v. Swanson*, 707 N.W.2d 645, 658 (Minn.2006))). The court held that McCray's conviction must be reversed because it was not "surely unattributable" to the prosecutorial misconduct. *Id.* at *2.

■■■ A prosecutor engages in prosecutorial misconduct when he violates "clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007). When assessing alleged prosecutorial misconduct during a closing argument, "we look to the closing argument as a whole, rather than to selected phrases and remarks." *Ture v. State*, 681 N.W.2d 9, 19 (Minn.2004). The determination of the propriety of a prosecutor's closing argument is " 'within the sound discretion of

the trial court.'" *State v. Ray,* 659 N.W.2d 736, 746 (Minn.2003) (quoting *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984)).

## I.

■ McCray first claims that the prosecutor's references to T.C.'s pretrial statement alleging penetration violated the district court's instruction pertaining to the dismissal of the first-degree criminal sexual conduct offense. Before closing arguments, the district court instructed the jury as follows:

> At the beginning of the trial, you were advised that two counts would be given to you for decision. As a matter of law, I have resolved one of these matters: The issue relating to penetration. You are instructed that you are not to speculate about the reasons for this legal determination and that it was made as a pure determination of law and that it is irrelevant to your eventual decision relating to the issues presented to you in this case. Neither the attorneys nor I will address these matters further, and that decision does not concern issues to be determined during your deliberations.

Although the court's statement that "[n]either the attorneys nor I will address *these matters* further" could be interpreted to prohibit all references to the alleged penetration, that is not the only reasonable interpretation. (Emphasis added.) At the beginning of the instruction, the court stated, "At the beginning of the trial, you were advised that two counts would be given to you for decision. As a matter of law, I have resolved one of these matters: The issue relating to penetration." Thus, the court's first use of the term "these matters" clearly occurred in the context of the court's dismissal of the first-degree charge and did not relate to the act of penetration

generally. The court's subsequent use of the same term could reasonably be interpreted to have the same meaning.

■ The discussion that preceded the district court's instruction suggests that the district court only intended to prohibit argument pertaining to the dismissal of the first-degree charge rather than to penetration generally. This discussion began when the prosecutor asked the court to instruct both attorneys "that it would be inappropriate to refer to the Court's legal determination to strike Count 1 from the Complaint." In making this request, the prosecutor specifically indicated that both sides should remain free to address the inconsistency between T.C.'s pretrial statement and her trial testimony. When challenging the prosecutor's requested instruction, defense counsel argued that the jury should be informed that the charge was dismissed because the State failed to meet its evidentiary burden—he did not challenge the prosecutor's assertion that the attorneys should be permitted to address the inconsistency between T.C.'s statements. Finally, when describing the instruction that it would give, the district court stated that "[it] would anticipate that there would be no argument *as to the facts or the law as to Count 1"* and that it would instruct the jury "that the attorneys will argue their respective positions relative to [Count 2]." (Emphasis added.) We have recognized that "the state is free to argue that particular witnesses were or were not credible." *Fields,* 730 N.W.2d at 785; *see also State v. Googins,* 255 N.W.2d 805, 806 (Minn.1977). T.C.'s credibility as a witness remained at issue with respect to the second-degree charge, and the inconsistency between her pretrial statement and her trial testimony relates to that credibility. Based on these circumstances, we conclude that the district court's instruction did not prohibit all references to the evidence of penetration during closing

arguments, but instead only prohibited arguments "as to the facts or the law" relative to the dismissed first-degree criminal sexual conduct charge.

Looking at the prosecutor's closing argument, some statements, if read in isolation, could be construed as an argument that penetration did occur and that McCray was therefore guilty of the dismissed first-degree offense. But these statements were made in the context of the prosecutor's broader discussion about T.C.'s credibility as a witness. Before addressing T.C.'s pretrial statement about penetration, the prosecutor outlined the numerous consistencies between the other facts in her pretrial statement and her trial testimony. Moreover, immediately after suggesting that T.C.'s inability to testify about penetration does not mean "that it did not occur," the prosecutor stated, "The fact that she had difficulty with that fact, with talking about it, does not mean that everything else she said was a lie. Does that make sense? Does that make sense because she couldn't talk about that, that everything else she said up to that point was not truthful?" Finally, in his discussion of T.C.'s pretrial statement, the prosecutor argued that the detail of the statement suggests its accuracy and asked the jury to consider whether "that [is] something that she would know about" and whether she had a motive to lie. Thus, looking as we must at the closing argument as a whole, we conclude that the prosecutor's references to penetration were focused on T.C.'s credibility as a witness and were therefore related to the facts and the law of the second-degree criminal sexual conduct charge, not the dismissed first-degree charge.

As noted earlier, the determination of the propriety of a prosecutor's closing argument is " 'within the sound discretion of the trial court.' " *Ray,* 659 N.W.2d at 746

(quoting *Parker,* 353 N.W.2d at 127). Although the district court gave McCray a "cure" by allowing him to argue issues relating to penetration and to state that the question of penetration was no longer before the jury, this "cure" was not specifically for prosecutorial misconduct, but rather "for whatever dilemma * * * that [the court] created, or that counsel have created, or that we created in combination." The court also stated that it "appreciate[d] why there could have been some misapprehension between [the prosecutor's] motion and the instruction as [the court] ultimately delivered it." Finally, and perhaps most telling, the court itself assumed responsibility for the confusion and indicated that the prosecutor was not at fault. Thus, although the district court failed to make any specific findings relative to whether the prosecutor violated its order, the record in this case suggests that the court concluded that there was good faith confusion about its instruction and that the prosecutor did not clearly and intentionally violate it.

For the foregoing reasons, we hold that the prosecutor did not violate the district court's instruction during the State's closing argument.

II.

McCray also argues that the prosecutor's references to penetration during closing argument violated established professional standards adopted by the American Bar Association (ABA). We have previously looked to ABA standards as a model when evaluating claims of prosecutorial misconduct. *State v. Johnson,* 616 N.W.2d 720, 729 (Minn.2000); *see also State v. Ramey,* 721 N.W.2d 294, 300–01 (Minn. 2006). The ABA Standards for Criminal Justice provide: "In closing argument to the jury, the prosecutor may argue all reasonable inferences from evidence in the

record. The prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw." ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 3–5.8(a) (3d ed.1993).

McCray argues that "the prosecutor drew inferences from evidence not in the record, because the [district] court's ruling and instruction had effectively removed T.C.'s statements about penetration from the record." But there is no indication in the record that the court either struck the evidence of penetration from the record or instructed the jury to disregard this evidence. Moreover, T.C.'s inconsistent statements regarding penetration were relevant to her credibility as a witness with respect to the remaining second-degree charge, and the prosecutor's argument specifically focused on this aspect of the evidence pertaining to penetration. Thus, we conclude that the prosecutor did not draw inferences from evidence not in the record during closing argument.

McCray also argues that "the prosecutor misled the jurors by trying to convince them that penetration had occurred, since the court's dismissal of the penetration count amounted to a finding that T.C. was not credible on this issue." But as noted earlier, when viewed in the context of the entire closing argument, the prosecutor's statements about penetration addressed T.C.'s credibility as a witness. The assessment of a witness's credibility "is exclusively the province of the jury." *Francis v. State,* 729 N.W.2d 584, 589 (Minn.2007). The district court's dismissal of the first-degree charge was not a finding that T.C.'s testimony was not credible, but rather was a legal conclusion that the state's evidence was not sufficient to prove penetration beyond a reasonable doubt. We therefore conclude that the prosecutor did not mislead the jury by suggesting to them that penetration had occurred. Accordingly, we conclude that McCray's assertion that the prosecutor violated the ABA Standards for Criminal Justice is wholly without merit.

Because the prosecutor did not violate either the district court's order or the ABA Standards for Criminal Justice, we conclude that the prosecutor did not violate any clear or established standards of conduct. We therefore hold that the prosecutor did not commit prosecutorial misconduct by discussing T.C.'s pretrial statement about penetration during the State's closing argument.[2] Accordingly, we reverse.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

2. Based on our decisions in *Mayhorn,* 720 N.W.2d at 785, and *Swanson,* 707 N.W.2d at 658, the court of appeals applied a "streamlined" approach in determining that a new trial was warranted in this case. *See McCray,* 2007 WL 2034268, at *1–2. But in two cases decided after *Mayhorn* and *Swanson,* we expressly noted that the continued viability of the two-tiered approach set forth in *State v. Caron,* 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974), for cases involving objected-to prosecutorial misconduct remains to be decided. *State v. Wren,* 738 N.W.2d 378, 390 n. 9, 394 n. 13 (Minn.2007); *Ramey,* 721 N.W.2d at 299 n. 4. Because we conclude that there was no prosecutorial misconduct in this case, we do not decide whether the *Caron* analysis remains viable or whether a different analysis applies in determining whether objected-to prosecutorial misconduct warrants a new trial. As in *Wren* and *Ramey,* we leave that question for another day.