STATE of Minnesota, Respondent,

v.

Gary Lee JOHNSON, Appellant.

No. A09–68.

Court of Appeals of Minnesota.

Dec. 1, 2009.

Lori Swanson, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN, and Brian J. Melton, Clay County Attorney, Moorhead, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; STONEBURNER, Judge; and JOHNSON, Judge.

## OPINION

LANSING, Judge.

A district court judge found Gary Johnson guilty of possession of child pornography under Minn.Stat. § 617.247, subd. 4(a) (2006), which prohibits the possession of any visual depiction that uses a minor to depict actual or simulated sexual conduct. In this appeal, Johnson argues that the image he possessed did not depict sexual conduct within the meaning of Minn.Stat. § 617.246, subd. 1(e)(5). We conclude that the plain meaning of the statutory definition of "sexual conduct" requires the depiction of an act of apparent sexual stimulation or gratification. Because Johnson's conviction is based on a determination of his own sexual stimulation as a viewer of the depiction and not based on the act depicted in the image, we reverse.

## FACTS

The question presented in this appeal arises from Gary Johnson's conviction following a stipulated-facts trial on one charge of possession of a pornographic work involving a minor. The depiction at issue is a frontal image of eleven- or twelve-year-old AD from the waist up, naked, and lying down. The image was discovered when AD asked a mandatory child-abuse reporter to take a picture of AD and her friend with a cell phone while the mandatory reporter was at the home that AD, her mother, and Johnson shared. When the mandatory reporter tried to look at the image of AD and her friend, the mandatory reporter found the naked upper-body image of AD. AD later told the Moorhead police that the cell phone previously belonged to Johnson, her stepfather. Moorhead Police determined that the image was sent from the phone in AD's possession to Johnson's new cell phone. Johnson denied taking the image and AD did not reveal who took the picture, but Johnson admitted that he had transferred the image to his new phone. The district court found Johnson guilty.

The state, Johnson, and the district court have described the image of AD in various ways throughout this proceeding. The parties stipulated that it depicted AD "lying on a bed with both arms crossed and the majority of her naked body exposed." On appeal, Johnson has generally adhered to this description. The state has characterized the image as depicting AD "holding her breasts and lying on a bed." The district court's order incorporated the parties' stipulated facts, and stated that, as stipulated by the parties, the district court did not review the image at the time of trial. The district court order did, however, refer to a description of the image from an earlier pretrial order that was based on its in camera review. In that order, the district court stated, "[AD] is lying down completely naked, and her arms are supporting and making contact with her naked breasts which are roughly the center focus of the picture. [AD] does not herself appear to be sexually gratified, and her expression is almost a frown."

When the district court issued the pretrial order, it also issued a simultaneous order requiring the cell phone with the image to be retained in a sealed file in the custody of the Moorhead Police Department and to be considered as part of the district court file. The image on the cell phone in the sealed file is of a young girl unclothed from the waist up, who the parties stipulate to be AD. The image does not show the lower part of her body. She is lying on her back with her arms crossed over her ribs. Her right hand is resting on her stomach; her left hand is resting on her right forearm. The top of her left forearm is in contact with her breasts. This is the record on which we review Johnson's challenge to his conviction of possession of child pornography.

## ISSUE

■ In the prosecution of a charge of possession of child pornography, does the term "sexual conduct" as used in Minn. Stat. § 617.246, subd. 1(e)(5), require proof that the depicted conduct is an act of apparent sexual stimulation or gratification or is the standard met by proof of sexual stimulation or gratification of the possessor of the depicted conduct?

## ANALYSIS

■ To prove the crime of possession of child pornography, the state is required to establish, as an element, that the material on which the charge is based uses a minor "to depict actual or simulated sexual conduct." Minn.Stat. §§ 617.247, subds. 2, 4(a), .246, subd. 1(f)(2)(i) (2006). Johnson's criminal liability for possessing the image of AD turns on whether it depicts "sexual conduct" as defined by statute. Statutory interpretation is a question of law, which we review de novo. *State v. Mauer*, 741 N.W.2d 107, 111 (Minn.2007). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." *Riley v.1987 Station Wagon*, 650 N.W.2d 441, 443 (Minn.2002) (quoting Minn.Stat. § 645.16 (2000)). We must interpret the statute prohibiting possession of child pornography in the context of the First Amendment's protection of freedom of expression. The Minnesota Legislature has stated that when ascertaining legislative intent, courts should presume that "the legislature does not intend to violate the Constitution of the United States or of this state." Minn. Stat. § 645.17(3) (2008).

■ States have a compelling interest in "safeguarding the physical and psychological well-being of a minor." *New York v. Ferber*, 458 U.S. 747, 756–57, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113 (1982). Because pornographic depictions of children are by their nature the product of sexual abuse, because this abuse is exacerbated by creating a permanent record of it, and because the material can then be used by possessors to seduce other children into sexual activity; states can prohibit the production, distribution, and possession of the material. *Osborne v. Ohio*, 495 U.S. 103, 109–11, 110 S.Ct. 1691, 1695–97, 109 L.Ed.2d 98 (1990); *Ferber*, 458 U.S. at 759–61, 102 S.Ct. at 3355–56. The pornographic depiction of children is not protected by the First Amendment whether or not the depiction is obscene. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 251, 122 S.Ct. 1389, 1402, 152 L.Ed.2d 403 (2002); *Ferber*, 458 U.S. at 763–64, 102 S.Ct. at 3358.

■ Nonetheless, the state's definition of what constitutes child pornography must conform to the First Amendment. *See generally id.* at 756, 102 S.Ct. at 3354 (stating that "[l]aws directed at the dissemination of child pornography run the risk of suppressing protected expression by allowing the hand of the censor to

become unduly heavy"). Depictions of nudity, without more, constitute protected expression. *Osborne*, 495 U.S. at 112, 110 S.Ct. at 1698. Material that is not necessarily obscene or the product of sexual abuse "does not fall outside the protection of the First Amendment" and cannot be prohibited. *Ashcroft*, 535 U.S at 251, 258, 122 S.Ct. at 1402, 1406 (striking down federal law banning as child pornography material that appears to depict minors but may not involve actual minors).

■ To ensure that a regulation penalizes material involving sexual abuse and not protected expression, criminal offenses must be limited to works that "visually depict sexual conduct by children below a specified age"; the category of "sexual conduct" proscribed must be "suitably limited and described"; and offenses must include "some element of scienter on the part of the defendant." *Ferber*, 458 U.S. at 764–65, 102 S.Ct. at 3358 (emphasis omitted). A statute that prohibits a substantial amount of constitutionally protected speech along with unprotected speech can be void for overbreadth. *See generally Osborne*, 495 U.S. at 111–22, 110 S.Ct. at 1697–1703 (discussing First Amendment overbreadth doctrine).

■ Taking into account these constitutional constraints on prohibitions of material depicting children, we turn to the language of the statute. When interpreting a statute, we first look "to see whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). An ambiguity exists only when a statute's language is subject to more than one reasonable interpretation. *State v. Stevenson*, 656 N.W.2d 235, 238 (Minn. 2003). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2008). Sections of a statute that relate to the same subject matter, should be construed together to determine the plain meaning. *Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 339 (Minn. 1984).

Johnson was found guilty of possessing a "pornographic work." Minn.Stat. § 617.247, subds. 2, 4(a). The relevant statutory definition of pornographic work is "any visual depiction" that "uses a minor to depict actual or simulated sexual conduct." Minn.Stat. § 617.246, subd. 1(f)(2)(i). Johnson argues that the image of AD does not depict sexual conduct and, therefore, he cannot be guilty of possessing a pornographic work. "Sexual conduct" has multiple meanings under the statute, which must be read together. *See Chanhassen*, 342 N.W.2d at 339 (holding that sections of legislation addressing same subject should be construed together). "Sexual conduct" means any of the following:

(1) an act of sexual intercourse, normal or perverted, including genital-genital, anal-genital, or oral-genital intercourse, whether between human beings or between a human being and an animal;

(2) sadomasochistic abuse, meaning flagellation, torture, or similar demeaning acts inflicted by or upon a person who is nude or clad in undergarments or in a revealing costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed;

(3) masturbation;

(4) lewd exhibitions of the genitals; or

(5) physical contact with the clothed or unclothed pubic areas or buttocks of

a human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.

Minn.Stat. § 617.246, subd. 1(e). The parties agree that the first four definitions do not apply. The district court concluded that the image of AD depicted sexual conduct under the last definition, subsection five.

A careful reading of subsection five convinces us that this definition of sexual conduct is unambiguous. The statute, at its core, requires an image or other visual representation to depict "physical contact with [a specified part of the body] ... in an act of apparent sexual stimulation or gratification." Minn.Stat. § 617.246, subd. 1(e)(5). The word "in" connects the description of the required physical contact to the action that must be depicted. Thus, the phrase "in an act of apparent sexual stimulation or gratification" modifies "physical contact" and limits the type of physical contact constituting sexual conduct. The statutory language requires the physical contact depicted in the image to be part of an act of sexual stimulation or gratification, or appear to be part of such an act.

The other four parts of the definition of sexual conduct confirm our conclusion that the language of the statute is clear. *See State v. Moore*, 699 N.W.2d 733, 738 (Minn.2005) (describing *ejusdem generis* canon of construction in which meaning of general words is restricted by association with more particular words); *see also* Minn.Stat. § 645.08(3) (codifying canon). The first four meanings describe actions and depictions which, when involving minors, clearly represent sexual abuse. These definitions suggest that the conduct described in subdivision 1(e)(5) must be

similarly sexual and explicit. *See generally Ferber*, 458 U.S. at 773, 102 S.Ct. at 3363 (addressing possible overbreadth of New York statute and concluding that statute's other examples of sexual conduct served to limit prohibition of "lewd exhibition[s] of the genitals" to unprotected speech); *Osborne*, 495 U.S. at 131, 110 S.Ct. at 1707–08 (Brennan, J., dissenting) (expressing concern that Ohio's statute did not contain list of examples of sexual conduct that would limit statute's reach to constitutionally unprotected material).

The statute, as understood through the plain meaning of the text, meets the requirements of the First Amendment. It precisely describes the proscribed content and limits the scope of the statute to visual depictions that represent the sexual abuse of minors. *See Ferber*, 458 U.S. at 764–65, 102 S.Ct. at 3358 (describing constitutional requirements for child pornography offenses). Because the regulation of child pornography is justified by the underlying conduct that is depicted, it must be clear from the visual representation that the designated sexual conduct occurred. *See Ashcroft*, 535 U.S. at 249–51, 122 S.Ct. at 1401–02 (holding that production of material that might not depict actual minors is not intrinsically related to sexual abuse of children). The language of subdivision 1(e)(5) does not proscribe speech protected by the Constitution because it requires depiction of an act that is or appears to be one of sexual stimulation or gratification, an act that constitutes sexual abuse when a minor is involved.

A reading of the statute that does not require the act depicted to involve sexual stimulation or gratification could be void for overbreadth. Subdivision 1(e)(5) describes physical contact with specified *clothed or unclothed* parts of the body. If we interpreted the statute to prohibit material that did not include a sexually ex-

plicit act but instead was simply sexually provocative, the statute could reach a significant amount of constitutionally protected content. Fashion and fine art images or paintings could be prohibited if they used models who are under the age of eighteen and who appear seductive. Similarly, family images of naked children could be banned if they were perceived as alluring. *See Osborne*, 495 U.S. at 130–32, 110 S.Ct. at 1707–08 (Brennan, J., dissenting) (describing overbreadth of Ohio's statute if it were understood to ban "lewd exhibition of nudity"). The plain language of subdivision 1(e)(5) does not prohibit this material and avoids potential overbreadth.

The state argues that an interpretation of the statute that requires the minor to appear sexually stimulated or gratified would create absurd results. That is not what the plain meaning requires. The minor depicted need not appear sexually stimulated or gratified for the material to be prohibited. Only the conduct depicted must be an act of apparent sexual stimulation or gratification. If the minor does appear sexually stimulated or gratified, the act depicted is likely to meet the statutory definition, but even in the absence of this appearance the material could still depict "sexual conduct." It is also significant that the plain language of "sexual conduct" includes acts of sexual stimulation or gratification regardless of who performs them. Thus, a depiction would constitute a pornographic work if an adult in the depiction were performing an act of sexual stimulation or gratification so long as a minor is part of the depiction.

Having determined that the definition of sexual conduct in subdivision 1(e)(5) is clear and unambiguous, we must still decide whether Johnson's conviction can be affirmed under the plain meaning of the statute. We conclude that it cannot. AD's arms, which are crossed under her breasts, are passively resting across her upper torso. The contact between her arms and her breasts is incidental to where her arms are resting. The physical contact between AD's forearm and breast is not part of an act of sexual stimulation or gratification. Consequently, the image of AD does not depict sexual conduct and is not a pornographic work.

■ The district court interpreted the definition of sexual conduct to include acts of sexual stimulation or gratification *"of the viewer"* and it found that the image of AD was possessed for that purpose. The district court relied on the unpublished opinion by this court in *State v. Dube*, Nos. C1-01-1432, C3-01-1433, 2002 WL 1611116 (Minn.App. July 17, 2002), *review denied* (Minn. Sept. 17, 2002). We note that, as an unpublished opinion, *Dube* is not precedential but we address it because of its instructive effect. Rose Dube was charged with using a minor in a sexual performance based on a image of Dube's daughter touching Dube's nipples, and a image of Rose Dube, touching her daughter's buttocks while her daughter is bent over. *Id.* at *1. In both photographs Dube and her daughter are naked. *Id.* Dube argued that the images did not depict "acts of apparent sexual stimulation or gratification." *Id.* at *3.

The *Dube* court looked to a case decided by the California Court of Appeal interpreting California's definition of "sexual conduct." *Id.* (citing *People v. Kongs*, 30 Cal.App.4th 1741, 37 Cal.Rptr.2d 327 (1994)). The California Court of Appeal emphasized the unnatural and abnormal focus on the minor's pubic areas in the pictures taken and possessed by Kongs and concluded that there was probable cause that the images were made "for the purpose of [the] sexual stimulation of the viewer." *Dube*, 2002 WL 1611116 at *3 (citing *Kongs*, 37 Cal.Rptr.2d at 333). The

*Dube* court found the California court's rationale persuasive and concluded there was sufficient evidence to support Dube's conviction for using a minor in a sexual performance. *Dube,* 2002 WL 1611116 at *3.

Importantly, California's criminal statute at the time defined "sexual conduct" to include "exhibition of the genitals, or pubic, or rectal area *for the purpose* of sexual stimulation *of the viewer.*" Cal.Penal Code § 311.4(d) (1994) (emphasis added). Minnesota's statute makes no reference to the viewer or the purpose of the physical contact depicted nor is it limited to this type of graphic displays. Minn.Stat. § 617.246, subd. 1(e)(5). The pictures described in *Dube* involve acts of apparent sexual stimulation of one or more persons who are subjects of the depictions under the plain meaning of subdivision 1(e)(5). The district court may have understood the *Dube* court's citation and quotation of *Kongs* to read into Minnesota law an element relating to the sexual stimulation of the viewer. But the clear language of the Minnesota statute does not support such a reading, and we do not interpret *Dube* to attempt to extend the statute's meaning.

The district court also relied on *United States v. Dost,* 636 F.Supp. 828 (S.D.Cal. 1986), which interpreted a federal provision prohibiting depiction of minors in a "lascivious exhibition of the genitals or pubic area." *Id.* at 830. Like the definition of sexual conduct in California, the statute in *Dost* was interpreted to encompass consideration of whether a visual depiction is intended to elicit a sexual response in the viewer. *Id.* at 832. But subdivision 1(e)(5) does not use the word "lascivious" or otherwise refer to the purpose of the physical contact depicted or to its likely effect on the viewer. *Compare* Minn.Stat. § 617.246, subd. 1(e)(5) *with* subd. 1(e)(4) (prohibiting "lewd exhibitions of the geni-

tals"). Instead, subdivision 1(e)(5) focuses on the type of act depicted.

Finally, the district court assessed the particular context in which the image was captured and possessed to determine that it was "made or transferred for the purpose of the ... sexual stimulation or gratification of the viewer." The district court relied on other photographic images discovered in the phone, for which charges were dismissed, and the relationship between AD and Johnson to support its finding. While these underlying facts are deeply troubling, and may well provide a basis for other charges or, at minimum, a child-protection action, they may not be considered when deciding whether the single, upper-body image involved in this prosecution depicts sexual conduct. The statute penalizes the possession of depictions of specific conduct; thus, the content of the material possessed, not the response of the possessor, must be the basis for determining whether it depicts sexual conduct. Johnson's conviction is therefore reversed.

### DECISION

The term "sexual conduct," as used in Minn.Stat. § 617.246, subd. 1(e)(5), to define the offense of possessing child pornography, requires the physical contact depicted to be part of an apparent act of sexual stimulation or gratification, and this objective standard is not met by proof that the possessor or viewer of the depiction was sexually stimulated or gratified by the depiction.

**Reversed.**