*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1629**

State of Minnesota,
Respondent,

vs.

Westley Gordon Vandell,
Appellant.

**Filed September 6, 2016
Affirmed
Connolly, Judge**

St. Louis County District Court
File No. 69DU-CR-13-4965

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Ross, Presiding Judge; Connolly, Judge; and Toussaint, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant was convicted of using a minor in a sexual performance. He challenges the sufficiency of the evidence; the determination that, if appellant testified, four unspecified prior felonies could be used to impeach him; the references to caselaw in the prosecutor's closing argument; and, in a pro se brief, various procedural matters.[1] Because we see no error of law and no abuse of discretion in appellant's conviction, we affirm.

## FACTS

In the early morning hours of January 1, 2014, D.L.L., then 16, was picked up at her parents' house by Jack Olson. He drove her to the apartment of appellant Westley Vandell, who was there with another man. D.L.L. and the three men drank alcohol and played a game.

About 4:00 a.m., D.L.L.'s father called the police to report that she had run away, leaving through the family garage and getting into a vehicle with Olson. Police officers

---

[1] By failing to brief the issue of whether the police officers' warrantless entry of his apartment was justified by exigent circumstances, appellant forfeited that issue. *See State v. Goodloe*, 718 N.W.2d 413, 422 n.6 (noting that failure to request a jury instruction is a forfeiture, rather than a waiver, of the right to object to the omission of that instruction on appeal). In his brief, he relied on the memorandum he submitted to the district court, invoking Minn. R. Civ. App. P. 128.01, subd. 2 (providing for situations in which "counsel elects . . . to rely upon memoranda submitted to the trial court supplemented by a short letter argument . . . ."). But appellant submitted a formal brief, not a short letter argument. No rule permits formal briefs to rely on memoranda submitted to the district court. *See* Minn. R. Civ. App. P. 128.02, subd. 1(d), (providing that, in a formal brief, "[t]he argument . . . shall include the contentions of the party with respect to the issues presented, the applicable standard of appellate review for each issue, the analyses, and the citations to the authorities. Each issue shall be separately presented."). Because appellant has forfeited the issue, we do not address it.

reached Olson on his cell phone; he said he had dropped D.L.L. at the end of a long driveway but could not remember its location because he was drunk.

Between 4:48 a.m. and 5:01 a.m., appellant took four photographs and two videos of D.L.L., who was then topless. In one part of the video, she is sitting on the lap of an adult male, kissing him, and rubbing her body against his; later in the video, she is lap-dancing in the lap of a different man who holds a cigarette for her to smoke and puts his arms around her.

By 11:00 a.m., D.L.L.'s mother had learned that D.L.L. was at appellant's apartment and called the police. Officers went to the apartment and spoke with the landlord, who told them that appellant is a level III sex offender. Olson was at appellant's apartment; he told the officers that he had been in the apartment about two hours earlier and that D.L.L. was then inside it with three adult males, one of whom (appellant) was a registered sexual predator.

The officers knocked at appellant's door and announced themselves as police officers, but no one answered. They then entered the apartment, where they saw D.L.L. in a sleeping bag between appellant and another man.

D.L.L. was crying and upset. She told the officers that appellant had taken photographs and a video of her while she was topless. The officers obtained a warrant, searched the apartment, and found the photos and videos appellant had taken of D.L.L. earlier that morning.

3

Appellant was charged with one felony count of using a minor in a sexual performance.[2] His motions to suppress the evidence and, in the alternative, to dismiss the charges were denied. After a jury trial, appellant was found guilty of using a minor in a sexual performance and was sentenced to 102 months in prison.

He challenges his conviction, arguing that: (1) the jury could not reasonably have found that he was guilty of using a minor in a sexual performance; (2) the district court abused its discretion in determining that, if appellant testified, four unspecified prior felonies could be used to impeach him; and (3) he is entitled to a new trial on the basis of prosecutorial misconduct; in a pro se brief, he also raises various procedural issues.

**D E C I S I O N**

**1.      Sufficiency of the Evidence**

An appellate court will not disturb a jury's verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the offense charged. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

"It is unlawful for a person to . . . use . . . a minor to engage in . . . posing . . . in any sexual performance or pornographic work if the person knows or has reason to know that the conduct intended is a sexual performance or a pornographic work." Minn. Stat. § 617.246, subd. 2 (2014). "'Sexual performance' means any . . . exhibition presented . . . for purposes of visual . . . reproduction that uses a minor to depict actual or simulated

---

[2] He was also charged with pictorial representation of a minor; that charge was dismissed at trial.

4

sexual conduct as defined by clause (e)." Minn. Stat. § 617.246, subd. 1(d) (2014). "'Sexual conduct' means . . . (5) physical contact with the clothed or unclothed breasts of the female . . . in an act of apparent sexual stimulation or gratification." *Id.*, subd. 1(e) (2014).

Appellant argues that the jury could not have concluded that he used a minor in a sexual performance because there was no sexual performance in the video or the photographs. But the video depicts D.L.L., topless, sitting on a man's lap facing him with her breasts pressed against him while they kiss and press their bodies together in a lap dance; the video also depicts D.L.L. sitting on the lap of another man, facing the camera with her breasts exposed. The four photographs show D.L.L. facing the camera with her breasts exposed. The photos, and particularly the longer video, support the jury's finding that appellant used a minor for a filmed sexual performance.

Appellant argues that he "was not making a porn film" but "simply videotaped [D.L.L.]—who was old enough to consent to sexual activity—enjoying herself at a party." But the fact that D.L.L. was old enough to consent to sexual activity is irrelevant: the statute refers to whether the performer is a minor, i.e., under the age of 18, not to whether the performer has reached the age of consent.

The jury saw a videotape of a 16-year-old woman, topless, sitting on men's laps and pressing herself against them. This videotape depicts a minor performing an act of apparent sexual stimulation or gratification and violates the statute. *See id.*, subd. 1(e)(5). Because "the conduct depicted [in the video the jury saw was] an act of apparent sexual stimulation or gratification," the jury had sufficient evidence to find that appellant had used a minor in

5

a sexual performance in violation of Minn. Stat. § 617.246, subd. 2. *See State v. Johnson*, 775 N.W.2d 377, 382 (Minn. 2009) (stating that a depiction is a pornographic work if an adult is performing an act of sexual stimulation or gratification as long as a minor is part of the depiction).

## 2. Admissibility of Prior Offenses

A district court's ruling on the impeachment of a witness by prior conviction is reviewed, as are other evidentiary rulings, under a clear abuse-of-discretion standard. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn. 1998). In 2002, appellant was sentenced on seven felonies: five counts of third-degree criminal sexual conduct, one count of pictorial representation of minors, and one count of using a minor in a sexual performance. The district court ruled that four of appellant's 2002 felony convictions, unspecified, could be admitted to impeach him if he were to testify.[3]

Appellant decided not to testify. When questioned about this decision, he agreed with his attorney's statement that he made the decision in light of the risks of his testifying and the fact that they had no need to get more information to the jury. He also said that he chose not to testify, was not under the influence of controlled substances and was thinking clearly, realized he would not be able to add any facts to the case without testifying, and wanted the jury instructed on his decision not to testify.

---

[3] Appellant also has a November 2014 failure-to-register-as-a-predatory-sex-offender conviction, which the district court excluded as too prejudicial.

A district court must consider the five *Jones* factors in ruling on impeachment by prior conviction: (1) the impeachment value of the prior crime; (2) the date of conviction and the defendant's subsequent history; (3) the similarity of the prior crime to the crime charged; (4) the importance of the defendant's testimony, and (5) the centrality of the defendant's credibility. *Id.* at 586 (citing *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978)). Appellant argues that the district court abused its discretion in its application of the *Jones* factors. We see no abuse of discretion.

As to the first factor, the district court noted that, although appellant's prior felonies were not crimes of dishonesty, they were felonies and as such had impeachment value. *See State v. Hill*, 801 N.W.2d 646, 652 (Minn. 2011) ("[T]he mere fact that a witness is a convicted felon holds impeachment value."). This factor favored admission.

As to the second factor, the district court noted that appellant was released from confinement for his 2002 offenses within the ten years mandated by Minn. R. Evid. 609 and has had "continued contact with law enforcement following his release from prison," which favored admission.

As to the third factor, similarity of the previous offense to the charged offense, the district court found that the state's agreement not to specify what the felony convictions were but only to identify them as felonies favored admission.

As to the fourth and fifth factors, the district court noted that, while the admission of the prior felonies might deter appellant from testifying, his credibility in light of his planned intoxication defense would be central if he did testify. The district court said that

7

the state's agreement not to specify what the felony convictions were would diminish this deterrent effect, so these factors favored admission.

The decision that four of appellant's 2002 felony convictions, unspecified, could be admitted to impeach him if he were to testify was not an abuse of discretion.[4]

## 3. Prosecutorial Misconduct

When reviewing an allegation of prosecutorial misconduct in closing argument, this court "look[s] to the closing argument as a whole, rather than to selected phrases and remarks." *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008). Prosecutorial misconduct occurs when a prosecutor "violates clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *Id.* (quotation omitted).

In rebuttal closing argument, the prosecutor referred to *Doe v. Brainerd Int'l Raceway, Inc.*, 533 N.W.2d 617, 620 (Minn. 1995) (concluding that two racecourse spectators who planned, organized, and participated with a minor in a wet T-shirt contest involving complete nudity and oral sex violated Minn. Stat. § 617.246, subd. 2 (prohibiting using a minor in a sexual performance)).

> [T]here have been cases in the State of Minnesota . . . trying to figure out why the conduct depicted in that video satisfie[s the] statutory requirements to make it illegal. [At a] wet T-shirt contest . . . a defendant . . . [who] was involved in capturing that on film[] and encouraging the activity that involved a minor[] was convicted of this same offense. . . .

---

[4] Appellant's argument that he "needed to testify to present his theory of defense" is not convincing: the defense he argued at trial was that the videos and photographs did not depict a "sexual performance" within the meaning of Minn. Stat. § 617.246, subd. 2, and this defense could not have been enhanced by his testimony.

> When there is an adult involved and there is an apparent act of sexual stimulation or gratification, that's the difference. This isn't someone running through a sprinkler. This isn't . . . taking off [a] soccer jersey at the end of the World Cup or the Olympics, [and] running around in [a] sports bra. That's not what we're talking about here. This isn't pictures of your kids or grandkids in the bathtub. This isn't people getting crazy at Mardi Gras and flashing a camera and doing nothing else to get beads. None of that is what's before you. . . . None of that is what happened here.

The prosecutor did not mention that the wet T-shirt contest also involved complete nudity and oral sex.

After closing arguments, appellant's counsel objected to the prosecutor's reference to *Doe*. Because the reference was objected to, we review under the harmless-error test.

> When reviewing objected-to alleged prosecutorial conduct, we have utilized a harmless-error test, the application of which varies based on the severity of the misconduct. *See* [*State v. Ramey*, 721 N.W.2d 294,] 298, 299 n.4 [Minn. 2006] (discussing the two-tiered approach articulated in *State v. Caron*, 300 Minn. 123, 127-28, 218 N.W.2d 197, 200 (1974), and "leaving for another day the question of whether the *Caron* two-tiered approach should continue to apply to cases involving objected-to prosecutorial misconduct.").

*State v. Carradine*, 812 N.W.2d 130, 146 (Minn. 2012) (footnote omitted). Serious misconduct is "harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003). "Because we conclude that the . . . objected-to prosecutorial misconduct here is harmless even under the standard for more serious misconduct, we do not reach the issue of the continued applicability of the *Caron* test to objected-to prosecutorial misconduct." *Carradine,* 812 N.W.2d at 146.

9

Appellant argues that, because there was no mention of the nudity or the oral sex involved in *Doe,* the prosecutor told the jury that a minor's participation in a wet T-shirt contest, without more, was a violation of the statute and "mischaracterized the case law to support an erroneous view of the elements of the charged offense." But any error in the prosecutor's reference to *Doe* was harmless. The jury had already heard a clear and accurate presentation of the elements of the statute from the district court, had seen the photographs and videos for themselves, and had heard D.L.L.'s testimony. The prosecutor's reference to *Doe* was a very brief portion of closing argument. The jury's verdict could not possibly be attributed to the prosecutor's passing reference to *Doe. See id.*

Appellant also contends that the prosecutor committed misconduct in closing argument by referring to the depictions of unclothed people presented in the National Geographic program and similar programs. Because appellant did not object to these alleged errors at trial, they are reviewed only if they constitute plain error. *See Ramey*, 721 N.W.2d at 302. If appellant shows a clear or obvious error in the prosecutor's conduct, the state must show that the error did not prejudice appellant. *Id.* at 302-03.

The prosecutor said that many of the jurors "watch[ed] Netflix or mentioned nature shows or have likely seen documentaries, National Geographic programs" and then asked a series of rhetorical questions.

> Is what is depicted on that video [of D.L.L.] consistent with what you would see on National Geographic? Something you would see portraying life of indigenous persons in Africa or [other] cultures or populations? How are those images

> depicted and presented as opposed to what is seen on that video?

Appellant claims this is misconduct because it included "information not in evidence, which inserted into the trial an element of racial bias." But the prosecutor did not mention race or any racial or socio-economic factors and appellant cites no support for the view that mentioning photographs of other cultures to contrast them with the photographs in evidence was error.[5] We believe the prosecutor's references to nonsexual nude photographs commonly available in the media were not error, and certainly not plain error. The references were simply to provide context.

Finally, appellant objects for the first time on appeal to the prosecutor's last sentence. Appellant's counsel in closing argument implied that appellant's acts were not serious or criminal because D.L.L. was old enough to consent to sexual activity and did not report any sexual crime. The prosecutor refuted this implication by a final sentence saying that D.L.L. would face "a lifetime of knowing that a permanent record ha[d] been made of her abasement." Appellant claims that this sentence was the prosecutor's "personal opinion on the morality of what had happened." But the prosecutor had earlier said to the jury:

> I don't believe this is an issue of morality. This is a court of law, and your job here is not to decide the morality of any of the decisions made by any parties on January 1st, 2013. . . . This is an issue of applying the facts of what was depicted in that video to the elements of the statute.

---

[5] Appellant's reliance on *State v. Ray*, 659 N.W.2d 736, 747 (Minn. 2003) (involved a prosecutor's "demeaning references" to the defendant's racial group) is misplaced. That case is distinguishable: the prosecutor here made no references to appellant's or anyone else's racial group.

Review of an allegation of prosecutorial misconduct in closing argument must be based on "the closing argument as a whole, rather than . . . selected phrases and remarks." *McCray*, 753 N.W.2d at 751. Having heard from the prosecutor that the jurors were to address a legal issue, not a moral issue, they were unlikely to interpret the prosecutor's final sentence as her "personal opinion on the morality of what had happened." Appellant has presented no evidence that this final sentence was a clear or obvious error. *See Ramey*, 721 N.W.2d at 302.

**4.      Appellant's Pro Se Arguments**

In his pro se brief, appellant argues that: (1) his jury was not impartial; (2) the jury should have been informed that appellant thought D.L.L. was 19 at the time of the incident; (3) D.L.L. testified that, contrary to the prosecutor's implications, she was not debased or embarrassed by what happened that night; (4) appellant did not intend to do anything illegal because he thought D.L.L. was 19 and he was "simply taking some party pictures for [his] friend"; (5) the other men present should also have been charged; and (6) federal charges against appellant were not pursued.

Claims involving either D.L.L.'s actual age or appellant's beliefs about D.L.L.'s age are irrelevant. *See* Minn. Stat. § 617.246, subd. 5 (providing that whether a minor has consented to a sexual performance is not a defense to a charge of prohibiting the use of a minor in a sexual performance); *see also State v. White*, 464 N.W.2d 585, 587 (Minn. App. 1990) (holding that being mistaken about a performer's age is not a defense to a charge of using a minor in a sexual performance), *review denied* (Minn. Mar. 15, 1991). Because appellant offers no support from the record and no legal authority to support any of the

other claims, those claims must also fail. *See State v. Munt*, 831 N.W.2d 569, 588 (Minn. 2013) (pro se claims unsupported by citations to the record or legal authority will not be considered).

**Affirmed.**