The district court then asked each attorney whether there were any objections to the other's closing argument. There were none.
The district court then instructed the jury, repeating the limiting instruction that was given earlier concerning the use of relationship evidence. The jury found appellant guilty of all five charged offenses. The district court sentenced appellant to 187 months in prison on one count of first-degree criminal sexual conduct and one year in prison on each count of domestic assault, to be served consecutively.[3]
This appeal followed.
ISSUES
I. Did the district court abuse its discretion by permitting the state to introduce relationship evidence at trial?
II. Did the state commit prosecutorial misconduct that affected appellant's substantial rights?
III. Did the district court err in sentencing appellant for two domestic-assault convictions arising from a single course of conduct?
IV. Is appellant entitled to relief based on his pro se argument?
ANALYSIS
I. The district court did not abuse its discretion by permitting the state to introduce relationship evidence concerning appellant's alleged domestic conduct toward K.R.
Appellant argues that the district court abused its discretion by permitting the state to introduce relationship evidence concerning appellant's alleged assaults against K.R.
"Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." State v. Amos , 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). Relationship evidence is admissible under Minn. Stat. § 634.20 if it is "domestic conduct by the accused against the victim of domestic conduct, or against other family or household members" and its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury." Minn. Stat. § 634.20. "[E]vidence showing how a defendant treats his family or household members, such as his former spouses or other girlfriends, sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." State v. Valentine , 787 N.W.2d 630, 637 (Minn. App. 2010).
"When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." State v. Bell , 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). Minn. Stat. § 634.20 presumes such relationship evidence to be admissible, and such "evidence becomes inadmissible only if its danger for unfair prejudice substantially outweighs its probative value." State v. Andersen , 900 N.W.2d 438, 442 (Minn. App. 2017). A limiting *806 instruction from the district court "lessen[s] the probability of undue weight being given by the jury to the evidence." State v. Lindsey , 755 N.W.2d 752, 757 (Minn. App. 2008) (quotation omitted), review denied (Minn. Oct. 29, 2008).
Here, the district court determined that the relevance of three instances of appellant's past domestic conduct against K.R. was not substantially outweighed by the danger of unfair prejudice. Importantly, the district court limited K.R.'s testimony to those three incidents, excluding the other proffered incidents based on its careful and individual consideration of each incident that K.R. claimed had occurred. The district court faithfully applied Minn. Stat. § 634.20. The district court also instructed the jury on the proper use of the relationship evidence, and on the limitation on the use of such evidence. We see no abuse of the district court's discretion.
II. The prosecutor did not commit misconduct and, even if she did, any plain error did not substantially affect the verdict.
Appellant argues that the prosecutor committed misconduct by disregarding a court order and referring to the charged offense as "rape," improperly eliciting testimony from law enforcement concerning prior contacts with appellant, eliciting opinion evidence concerning whether a sexual assault occurred, and rhetorically asking in rebuttal argument, "Since when is the word of a rape victim not enough?"
Because appellant did not object to any of the prosecutor's alleged misconduct, we apply a modified plain-error test. State v. Mosley , 853 N.W.2d 789, 801 (Minn. 2014). To prevail, an appellant must establish that there was an error and that the error was plain. State v. Ramey , 721 N.W.2d 294, 302 (Minn. 2006). If such an error is established, the burden then shifts to the state to show that the plain error did not affect appellant's substantial rights. Id. "A prosecutor engages in prosecutorial misconduct when he violates 'clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law.' " State v. McCray , 753 N.W.2d 746, 751 (Minn. 2008) (quoting State v. Fields , 730 N.W.2d 777, 782 (Minn. 2007) ).
A. The prosecutor's actions do not constitute misconduct.
1. Disregarding a court order
Appellant argues that the prosecutor violated a court order not to use the term "rape" at trial.
Before trial, the district court said:
I'm going to ask you to share with ... law enforcement and any witnesses that testify, ... given the sensitive nature of this case I want to avoid ... disparaging ..., accusatory, and derogatory type phrasing. I mean it is ... a sexual assault, criminal sexual conduct case, it's not a rape case, things like that, and just to urge law enforcement, any lay witnesses you might have to maintain professionalism and decorum on the stand.
The district court's pretrial comments do not constitute an order. See State v. Word , 755 N.W.2d 776, 783 (Minn. App. 2008) (holding that a district court's provisional, qualified, or unclear pretrial rulings are not definitive pretrial rulings). The district court did not prohibit the prosecutor from making any use of the term "rape" at trial. Instead, the district court told counsel in general terms to instruct witnesses to be professional and "avoid" derogatory terms. Had appellant sought to prohibit the term "rape" from any use at trial, he should have sought a clearer order to that effect or objected at trial. See Word , 755 N.W.2d at 783 (stating that an attorney "should renew an objection or seek clarification or reversal of a prior *807 ruling" when unsure if evidence offered at trial violates a pretrial order). He did neither. Moreover, the prosecutor characterized the offense using the same word that M.P. used in her testimony, and the term used by the lay witnesses who assisted M.P. by calling the police. See State v. Leutschaft , 759 N.W.2d 414, 425 (Minn. App. 2009) (stating that the prosecutor's characterization of an incident as "road rage" was a "proper comment" when that characterization was used by a witness).
The prosecutor did not disregard a court order, and her use of the term "rape" did not violate any directive of the district court.
2. Improper testimony
Appellant also argues that the state improperly elicited testimony from one law enforcement officer that he knew appellant from previous incidents and from two officers that they believed that an assault occurred. There was no objection at trial, so we again apply the modified plain-error standard of review to this claim of prosecutorial misconduct. Mosley , 853 N.W.2d at 801.
"The state has a duty to prepare its witnesses, prior to testifying, to avoid inadmissible or prejudicial statements." State v. McNeil , 658 N.W.2d 228, 232 (Minn. App. 2003). Improper testimony by a state's witness may be considered prosecutorial misconduct and justify reversal. State v. Mahkuk , 736 N.W.2d 675, 689-90 (Minn. 2007). We are "much more likely to find prejudicial misconduct when the state intentionally elicits impermissible testimony." McNeil , 658 N.W.2d at 232. "[A]n intentional elicitation of impermissible testimony, although erroneous, will warrant reversal only when it is likely that the impermissible testimony substantially weighed on the jury's decision." Id.
Appellant argues that the state improperly elicited testimony from Sergeant Braun that he knew appellant from prior contacts. "Eliciting an officer's testimony that he knows the defendant from prior contacts is error if the defendant's identity is not an issue in the case." Valentine , 787 N.W.2d at 641. In State v. Strommen , the supreme court stated that it was plain error for an officer to testify that he knew the defendant from prior contacts and knew that the defendant had previously killed someone. 648 N.W.2d 681, 686-88 (Minn. 2002). But " Strommen did not hold that the officer's comments about prior contacts, on their own, were reversible plain error." Id.
Here, the prosecutor asked Sergeant Braun what information he learned on the scene, and Sergeant Braun responded that he got information concerning M.P. and appellant, both of whom he knew from prior contacts. The prosecutor's question did not call for a response concerning whether or how the officer was familiar with appellant. The prosecutor moved on and questioned the officer about the charged offense. "[U]nintended responses under unplanned circumstances ordinarily do not require a new trial." State v. Hagen , 361 N.W.2d 407, 413 (Minn. App. 1985), review denied (Minn. Apr. 18, 1985). Sergeant Braun's brief and unsolicited comment that he knew both appellant and M.P. does not constitute prosecutorial misconduct.
But even if we were to conclude that Sergean Braun's fleeting and unsolicited comment that he knew both M.P. and appellant amounted to plain error that came about because of improper witness preparation by the prosecutor, appellant would not be entitled to relief on appeal. Only where such error affects a party's substantial rights do we afford plain-error relief. Ramey , 721 N.W.2d at 302. Here, the brief reference by a witness to knowing both of the people with whom *808 he was dealing, without any stated reason why or how he knew them, surely had no effect on appellant's substantial rights.
Appellant also argues that the testimony of Sergeant Braun and Officer Evans that each formed an opinion from investigation that an assault occurred constitutes prosecutorial misconduct. "[A] witness qualified as an expert" can provide opinion testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Minn. R. Evid. 702. Lay witnesses can provide opinion testimony as well, but only to opinions "which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Minn. R. Evid. 701. Regardless of whether the witness is a lay or expert witness, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Minn. R. Evid. 704.
"[U]ltimate conclusion testimony which embraces legal conclusions or terms of art" is not considered helpful to the jury. State v. DeWald , 463 N.W.2d 741, 744 (Minn. 1990). The district court may also exclude testimony on the ultimate issue "when the testimony would merely tell the jury what result to reach." State v. Moore , 699 N.W.2d 733, 740 (Minn. 2005) (quotation omitted). But the supreme court has allowed police officers to express opinions concerning who killed a victim when the conclusion "was factual rather than legal and was offered in response to leading questions," and the officer avoided legal terminology. DeWald , 463 N.W.2d at 744. We have also held that a 911 operator's lay opinion testimony that the caller was being assaulted was admissible because it "was 'rationally based' on her perceptions and was helpful to the jury." State v. Washington , 725 N.W.2d 125, 137 (Minn. App. 2006), review denied (Mar. 20, 2007).
The officers here were not qualified as experts and their testimony was not offered as that of experts. The prosecutor asked each officer whether he had formed an opinion from the investigation, and both officers said they concluded that an assault occurred. Both officers testified about the facts and evidence revealed by their investigation that indicated an assault. The jury heard and saw this very same evidence. The prosecutor elicited only lay opinions from the two officers, testimony that was rationally based on each officer's own perceptions. It was not misconduct to elicit such brief testimony.
3. Inflaming Passions
Appellant also argues that the prosecutor inflamed the passions of the jury in rebuttal argument by rhetorically asking, "Since when is the word of a rape victim not enough?" We again apply the modified plain-error standard of review, because there was no objection at trial. Mosley , 853 N.W.2d at 802.
Prosecutors have "considerable latitude" during closing arguments and are "not required to make a colorless argument." State v. Williams , 586 N.W.2d 123, 127 (Minn. 1998). Prosecutors also have "the right to fairly meet the arguments of the defendant." State v. Martin , 773 N.W.2d 89, 106 (Minn. 2009). But, as a general rule, the state "must avoid inflaming the jury's passions and prejudices against the defendant." State v. Porter , 526 N.W.2d 359, 363 (Minn. 1995). "While the state's argument need not be colorless, it must be based on the evidence produced at trial, or the reasonable inferences from that evidence." Id. (quotation omitted). In State v. Cao , the supreme court recognized that "there is no conclusive statement in our case law prohibiting a prosecutor from *809 stating that a victim's testimony need not be corroborated in a criminal sexual conduct case" so "[i]t [could not] be said that the prosecutor plainly erred by contravening settled law." 788 N.W.2d 710, 717 (Minn. 2010).
In summation, appellant's trial counsel attacked M.P.'s credibility and invited the jury to question M.P.'s testimony. In rebuttal, the prosecutor asked, "[S]ince when is the word of a rape victim not enough?" But the prosecutor also asked the jury to "look at the physical evidence we have in this case" and consider the testimony of the medical experts. The prosecutor did not rely on this potentially inflammatory rhetorical question to persuade the jury; rather, she emphasized that, even if the jury did not believe M.P.'s testimony, there was sufficient other evidence to corroborate her story. The state's argument was tailored to meet the arguments made by appellant's trial counsel, and does not constitute misconduct.
B. Any error, even if plain, did not affect appellant's substantial rights.
Plain error does not warrant reversal when there is "no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." Id. (quotation omitted). At trial, M.P. gave detailed testimony about the assault. The state also provided photographs and other evidence of the injuries that M.P. sustained, corroborated by the testimony of police officers, neighbors, and nurses. Importantly, the state called witnesses who provided detailed testimony explaining the medical reasons why M.P.'s injuries appeared as and when they did, and that the injuries not having been visible initially did not mean that they were not sustained when and how M.P. claimed. The jury's verdict shows that it credited the testimony of M.P. and the medical professionals. It seems very doubtful, in light of the overwhelming evidence of appellant's guilt, that the prosecutor's use of the term "rape," Sergeant Braun's undefined familiarity with M.P. and appellant, the officers' brief lay opinion testimony, or the prosecutor's rebuttal argument, or all of those things in combination, had any substantial effect on the verdict.
III. Despite appellant's criminal-sexual-conduct conviction having involved force or violence, the district court could not properly sentence appellant on both domestic-assault convictions because both of those offenses were based on the same conduct by appellant.
Here, the jury found appellant guilty of three criminal-sexual-conduct crimes arising from his sexual assault of M.P. The district court correctly noted that, because the criminal-sexual-conduct crimes were all part of the same course of conduct, it could only adjudicate and sentence appellant for one of them. The district court also sentenced appellant for two assaults, and made both of those sentences consecutive to the criminal-sexual-conduct sentence.
Appellant argues that the district court erred in sentencing him on both domestic-assault convictions because they arose out of the same behavioral incident as the first-degree criminal-sexual-conduct conviction.[4]
"Whether an offense is subject to multiple sentences under Minn. Stat. § 609.035 is a question of law, which we review de novo." State v. Ferguson , 808 N.W.2d 586, 590 (Minn. 2012). "Whether a *810 defendant's offenses occurred as part of a single course of conduct is a mixed question of law and fact. We review the district court's findings of historical fact under the clearly erroneous standard, but we review the district court's application of the law to those facts de novo." State v. Jones , 848 N.W.2d 528, 533 (Minn. 2014) (citation omitted). "Whether a defendant's multiple offenses occurred during a single course of conduct depends on the facts and circumstances of the case. Offenses are part of a single course of conduct if the offenses occurred at substantially the same time and place and were motivated by a single criminal objective." Id. (citation omitted). See also State v. Johnson , 273 Minn. 394, 404, 141 N.W.2d 517, 525 (1966) (stating that "the essential ingredient of any test is whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective").
Minn. Stat. § 609.035 (2016) prohibits the imposition of multiple sentences for offenses arising from a single behavioral incident in most cases. But "a prosecution or conviction for committing" first- through fourth-degree criminal sexual conduct "with force or violence is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct." Minn. Stat. § 609.035, subd. 6. The supreme court has recognized that "the legislature has created a number of exceptions to the single-behavioral-incident rule," including criminal-sexual-conduct offenses. State v. Williams , 771 N.W.2d 514, 520 (Minn. 2009). "As a result, if a defendant commits one of these offenses, he or she may be convicted and sentenced for other offenses that arise out of the same behavioral incident." Id. This is because "the legislature did not intend section 609.035 to immunize offenders in every case from the consequences of separate crimes intentionally committed in a single episode." Ferguson , 808 N.W.2d at 589.
But a defendant may not be adjudicated and sentenced "twice [for] the same offense or of a greater and a lesser-included offense on the basis of the same act or course of conduct." State v. Dudrey , 330 N.W.2d 719, 721 (Minn. 1983) (interpreting Minn. Stat. § 609.04 (1982) ) (emphasis added). If a jury has convicted a defendant of more than one offense from a single course of conduct, "the court [is] to adjudicate formally and impose sentence on one count only." State v. Pflepsen , 590 N.W.2d 759, 766 (Minn. 1999).
A criminal-sexual-conduct conviction involving force or violence is not a bar to "punishment for any other crime committed by the defendant as part of the same conduct." Minn. Stat. § 609.035, subd. 6 (emphasis added). The word "any" is given broad application and recognized that it generally means "every" or "all." State v. Watson , 829 N.W.2d 626, 633 (Minn. App. 2013), review denied (Minn. June 26, 2013).[5] The statute permits additional convictions for "any other crime committed by the defendant," not merely "another" or "one other" crime. Minn. Stat. § 609.035, subd. 6 (emphasis added). The statute likewise discusses the effect of consecutive sentences when the defendant "is punished for more than one crime ." Id. (emphasis added). The plain language of Minn. Stat. § 609.035, subd. 6, allows for the conviction of and sentence for "any other crime," including a crime committed during the same behavioral incident as a criminal-sexual-conduct offense involving force or violence.[6]
*811 However, Minn. Stat. § 609.035, subd. 1, provides that when "a person's conduct constitutes more than one offense ... the person may be punished for only one of the offenses." While a criminal defendant who is convicted of a criminal-sexual-conduct offense involving force or violence may be convicted of and sentenced for "any other crime" committed during the same course of conduct as the sex offense, separate and distinct conduct must underlie each of the additional offenses to warrant conviction and sentencing. The state may charge a number of additional offenses based on identical conduct. See Minn. Stat. § 609.035, subd. 1 ("All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts."). But punishment for each additional offense is only proper if the underlying conduct is not identical to another offense for which the defendant has already been sentenced. Id.
Here, the jury found appellant guilty of several criminal-sexual-conduct crimes involving force or violence, and of two counts of domestic assault. The complaint identified the two counts of domestic assault as occurring "on or about August 13, 2016," the same date as the sexual assault. The first domestic-assault charge alleged appellant to have committed "an act with intent to cause fear in another of immediate bodily harm or death" (assault-fear), and the second alleged that appellant "intentionally inflict[ed] or attempt[ed] to inflict bodily harm" (assault-harm). The district court properly instructed the jury on the elements of each of those charges. The jury, through its guilty verdicts, found that the state proved both.
But, while the state charged appellant with two types of domestic assault-one based on intent to cause fear and the other on intent to inflict bodily harm-the record reflects that both charges arose from the exact same conduct, described in the complaint as: "[appellant] hit [M.P.] repeatedly in the arms and face and kicked her in her pelvic area." The jury found that this conduct by appellant amounted to both assault-fear and assault-harm. In other words, the jury determined that one incident of conduct constituted two different assault crimes. Because the domestic assault was part of the same course of conduct as the sexual assault, Minn. Stat. § 609.035, subd. 6, permits the district court to impose punishment for domestic assault. But because the same conduct was charged in the complaint and tried to the jury in two counts of domestic assault, Minn. Stat. § 609.035, subd. 1, permits additional punishment for only one count of domestic assault for the described conduct. Accordingly, the district court could not sentence appellant to consecutive one-year prison terms for both counts of domestic assault based on the very same described conduct of appellant.[7]
We also recognize that our prior holding in State v. Dalbec , 789 N.W.2d 508, 512-13 (Minn. 2010), that assault-fear and assault-harm are "alternative means by which an assault may be committed" has been called into question by the supreme court's holding in *812 State v. Fleck , 810 N.W.2d 303, 312 (Minn. 2012), that assault-harm is a general-intent crime and assault-fear is a specific-intent crime. See State v. Machacek , No. A13-0508, 2015 WL 4523505, at *6-7 (Minn. App. June 29, 2015), review denied (Minn. Sept. 15, 2015); State v. Moallin , No. A14-0329, 2014 WL 7237037, at *4-5 (Minn. App. Dec. 22, 2014), review granted (Minn. Feb. 25, 2015) and order granting review vacated (Minn. Aug. 11, 2015); State v. Evans , No. A13-2256, 2014 WL 7011130, at *2-3 (Minn. App. Dec. 15, 2014), review granted (Minn. Feb. 25, 2015) and order granting review vacated (Minn. Aug. 11, 2015). But because appellant has not challenged the propriety of two domestic-assault convictions on these facts, the question of whether assault-fear and assault-harm are separate crimes or are instead alternative means of committing the same crime, is not before us. Based on the plain language of Minn. Stat. § 609.035, subd. 1, the jury's determination that appellant's conduct as described in the complaint constituted both assault-harm and assault-fear allows only one consecutive sentence for that conduct.[8]
We therefore reverse appellant's sentences on the domestic-assault charges and remand for the district court to vacate the sentence for one of those convictions.
IV. Appellant's pro se argument is based on matters outside the record.
Appellant argues in a pro se supplemental brief that his convictions should be reversed because he was forced to wear an ankle bracelet at trial. After a thorough review of the record, we see no mention of an ankle bracelet in any of the documents or in the transcripts of the district court proceedings. "It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered." Plowman v. Copeland, Buhl & Co. , 261 N.W.2d 581, 583 (Minn. 1977). We do not reach the merits of appellant's argument.
DECISION
The district court acted within its discretion by allowing the state to submit limited relationship evidence of appellant's prior assaults against an ex-girlfriend, and the prosecutor did not commit misconduct amounting to plain error. The district court also did not err in convicting and sentencing appellant for one domestic assault because, under the plain language of Minn. Stat. § 609.035, subd. 6, a person convicted of a criminal-sexual-conduct offense with force or violence may be convicted and sentenced for any other crime committed by that person as part of the same conduct. But because the two domestic-assault crimes involve the same underlying conduct of appellant, he may be sentenced for only one crime of domestic assault.
Affirmed in part, reversed in part, and remanded.

The additional count of first-degree criminal sexual conduct and the count of third-degree criminal sexual conduct were not formally adjudicated.

Appellant does not argue on appeal that only one domestic-assault conviction was proper under Minn. Stat. § 609.04 (2016). We therefore do not consider that question.

Watson discussed the firearm exception, contained in Minn. Stat. § 609.035, subd. 3, which has identical language to that at issue in subdivision 6.

We have reached this same result in at least one unpublished case that presented a nearly identical legal issue. State v. Huffman , No. A14-1363, 2015 WL 1757966, *6 (Minn. App. April 20, 2015), review denied (June 30, 2015). There, we cited Williams as permitting adjudication and sentencing for two different crimes arising from the same course of conduct as a sexual assault. Id.

We suppose that the state might also have charged appellant with disorderly conduct for this conduct as well. Minn. Stat. § 609.72, subd. 1 (2016) (describing disorderly conduct as, among other things, engaging in "offensive, obscene, abusive, boisterous, or noisy conduct" in a "public or private place"). Perhaps this same conduct amounted to other crimes. But the conduct can only be punished once, in addition to the criminal-sexual-conduct conviction.

In any event, Machacek , Moallin , and Evans are distinguishable. In those cases, the defendants were charged with individual counts of assault that did not specify fear or harm; the question was whether the district courts' jury instructions were proper and whether the juries were unanimous on what conduct had been proved. Machacek , 2015 WL 4523505 at *6-7 ; Moallin , 2014 WL 7237037 at *4-5 ; Evans , 2014 WL 7011130 at *2-3. Here, the state charged both assault-fear and assault-harm based on the identical described conduct; the jury found that the state proved both charges.