*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0004**

State of Minnesota,
Respondent,

vs.

Carmen Marie Burth,
Appellant.

**Filed December 26, 2023**
**Affirmed**
**Bjorkman, Judge**

Chisago County District Court
File No. 13-CR-19-1031

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janet Reiter, Chisago County Attorney, Brandon J. Pellerin, Assistant County Attorney, Center City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Segal, Chief Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges her conviction of animal mistreatment for failing to provide her horses necessary food or shelter, arguing that the district court plainly erred by

admitting (1) expert testimony on the ultimate issue and (2) irrelevant and prejudicial evidence of other aspects of the horses' health and wellbeing, unrelated to food or shelter. She asserts additional arguments in a pro se supplemental brief. We affirm.

### FACTS

Appellant Carmen Marie Burth keeps "rescued" horses on her property in North Branch. In early September 2019, Animal Humane Society investigator Amanda Oquist received a complaint about "skinny" horses on Burth's property. When she went to the property, Oquist saw four or five horses that appeared "very skinny." Because she could only view the horses, she was unable to use the Henneke Body Condition Scoring System, a tool that scores a horse's body condition on a scale of one to nine based on feeling for muscle and fat around the horse's body. A score of one means the horse is emaciated and a score of nine means the horse is obese; an ideal score is between four and six. But Oquist visually estimated the horses' body-condition scores as between one and three.

Oquist visited the property three more times between September and November. Over time, she saw the horses look "a little bit better," then lose the weight gains. She also received a follow-up call from the original complainant about a lack of hay on the property, and Oquist consistently saw little or no hay available to the horses. In November, after Burth canceled a veterinary appointment for one of the horses, Oquist sought to coordinate a herd assessment. Burth declined, saying that she would get her own assessment. Oquist then shared the results of her investigation with police, who obtained a search warrant.

On November 15, police searched Burth's property. During the search, Oquist and Dr. Michelle Wiberg, a veterinarian who had treated some of Burth's horses, assessed the

20 horses on the property using the Henneke Body Condition Scoring System. They recommended the removal of all horses with a score of 2.5 or lower, indicating a need for "additional nutrition," and those with higher scores but requiring "significant veterinary care." Eleven horses were seized and transferred to veterinary facilities for treatment.

Burth was charged with one count of failing to provide an animal "necessary food, water, or shelter" in violation of Minn. Stat. § 343.21, subd. 2 (2018). At trial, Oquist and Dr. Wiberg testified consistent with the facts stated above. Dr. Wiberg and the two veterinarians who treated the seized horses offered additional expert testimony about the horses' body condition and their assessment of the horses' care based on their condition. Burth countered with the testimony of a horse-rescue expert who opined as to the horses' body condition based on his review of photographs of the horses. The jury found Burth guilty, and the district court imposed a stayed 90-day jail sentence.

Burth appeals.

## DECISION

### I. The district court did not commit prejudicial plain error in the admission of evidence.

Where, as here, the defendant does not object to the admission of evidence, they forfeit review of the issue. *State v. Fraga*, 898 N.W.2d 263, 276 (Minn. 2017). This principle "encourages defendants to object while in the trial court so that any errors can be corrected before their full impact is realized." *State v. Pearson*, 775 N.W.2d 155, 161 (Minn. 2009). It also is consistent with our refusal to presume error on appeal, particularly in matters committed to the district court's broad discretion such as evidentiary rulings.

3

*See Dolo v. State*, 942 N.W.2d 357, 362 (Minn. 2020) (requiring deference to district court's "exercise of discretion in evidentiary matters" (quotation omitted)); *Waters v. Fiebelkorn*, 13 N.W.2d 461, 464 (Minn. 1944) ("[O]n appeal error is never presumed."). Nonetheless, we have "limited power" under the plain-error standard to correct certain unobjected-to errors. *Fraga*, 898 N.W.2d at 277 (quotation omitted). To obtain relief under that standard, a defendant generally must show that (1) there was an error, (2) it was plain "in that it violates or contradicts case law or a rule," and (3) it affected the defendant's substantial rights. *Id.* Even if the first three requirements are met, we "may correct the error *only* when it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022).

Burth argues that the district court plainly erred by admitting (1) expert testimony on the ultimate issue and (2) evidence that is irrelevant and unfairly prejudicial because it encompasses health concerns unrelated to food and shelter. We address each argument in turn.

**Expert Testimony**

An expert witness may testify in the form of an opinion. Minn. R. Evid. 702. That opinion testimony may address "an ultimate issue to be decided by the trier of fact." Minn. R. Evid. 704. But an expert "may not offer an opinion as to a legal issue or a mixed question of law and fact." *State v. Xiong*, 829 N.W.2d 391, 396 (Minn. 2013). Nor may an expert opine as to matters within the jurors' lay knowledge and experience because it "will not add precision or depth to the jury's ability to reach conclusions." *State v. Obeta*, 796 N.W.2d 282, 289 (Minn. 2011) (quotation omitted).

4

Burth contends the district court plainly erred by permitting the three veterinarians to testify as to the ultimate issue—whether she deprived the horses of necessary food and shelter. We disagree. The experts testified about what the horses' body condition and other health considerations revealed about the adequacy of the food and shelter the horses received. This testimony did not purport to decide the ultimate issue the jury was asked to decide. Rather, it helped the jurors understand what the photographs and descriptions of the horses mean with respect to food and shelter. Accordingly, we discern no plain error in admitting the testimony.

Moreover, Burth is not entitled to relief unless the claimed error affected her substantial rights. In assessing whether an error affected a defendant's substantial rights, one factor we consider is the strength of the evidence against the defendant. *Fraga*, 898 N.W.2d at 277. That factor is dispositive here because the evidence of Burth's guilt is overwhelming. Throughout the fall of 2019, Oquist consistently saw very skinny horses on Burth's property and little to no hay available to them. Photographs from that time depict horses as so thin that their ribs and other bones are sticking out. The three veterinarians who physically examined the horses described them as "skeletal" and "significantly" underweight, and gave several horses body-condition scores at or below 2. Even Burth's expert agreed that several of the horses could have body-condition scores as low as 2. The record also contains evidence that the available constructed shelters were not large enough to protect all 20 horses from the elements, and numerous horses had a skin condition known as "rain rot" indicative of insufficient shelter. Because the record

5

negates any reasonable likelihood that the challenged expert testimony substantially affected the verdict, we conclude that any error in admitting the testimony was harmless.

**Evidence of Other Health Concerns**

Relevant evidence is generally admissible. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency" to make the existence of any material fact more or less probable. Minn. R. Evid. 401. This is a low bar: "A fact is relevant if, when taken alone or in connection of other facts, it warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question." *State v. Swinger*, 800 N.W.2d 833, 839 (Minn. App. 2011) (quotation omitted), *rev. denied* (Minn. Sept. 28, 2011). Evidence is inadmissible if it is not relevant, Minn. R. Evid. 402, or if it is confusing, misleading, or unfairly prejudicial, Minn. R. Evid. 403.

Burth contends the district court plainly erred by admitting evidence of other aspects of the horses' health and well-being, unrelated to food or shelter, because that evidence is irrelevant and unfairly prejudicial. We are not persuaded. Some of the challenged evidence is plainly relevant, such as one horse's apparent Cushing's Disease, which causes excess hair growth that interferes with any visual assessment of the horse's body condition, and the unsafe environment created by "hazard[ous]" uncapped fence posts, which is reasonably related to the concept of shelter.[1] And some of it—evidence of the horses' dental care, hoof condition, parasites, and other physical conditions—provides helpful

---

[1] The jury instructions did not define the term shelter.

context for the jury in determining whether the horses' condition resulted from a lack of food or shelter.

Even if the district court plainly erred by admitting evidence of the horses' other health conditions, Burth has not demonstrated that this evidence affected her substantial rights. As detailed above, the evidence shows that numerous horses in Burth's care were so thin as to be skeletal, despite months of Oquist's efforts to ensure Burth was obtaining sufficient food for them, and several horses had "rain rot" indicative of insufficient shelter. On this record, there is no reasonable likelihood that the jury would have acquitted Burth if evidence of the horses' other health issues had been excluded.

## II. None of Burth's pro se arguments entitle her to relief.

In a pro se supplemental brief, Burth argues that (1) the district court violated her confrontation right by admitting the statements of the complainant, who did not testify; (2) the district court plainly erred by admitting irrelevant evidence as to the zoning of her property; (3) the prosecutor engaged in unobjected-to misconduct throughout the trial; and (4) the district court abused its discretion by denying her motion for a mistrial based on prosecutorial misconduct during closing argument. We address each argument in turn.

### Confrontation

Under the Confrontation Clause, a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Admission of an out-of-court statement violates the Confrontation Clause if the statement is "testimonial," it was admitted for the truth of the matter asserted, and the defendant was not able to cross-examine the declarant. *Andersen v. State*, 830 N.W.2d 1, 9 (Minn. 2013) (citing *Crawford*

*v. Washington*, 541 U.S. 36, 59 & n.9 (2004)). We review de novo whether the admission of evidence violates the Confrontation Clause. *State v. Sutter*, 959 N.W.2d 760, 764 (Minn. 2021). A confrontation violation does not require reversal if it was harmless beyond a reasonable doubt. *State v. Swaney*, 787 N.W.2d 541, 555 (Minn. 2010).

Burth argues that the district court violated her confrontation right by admitting, through Oquist's testimony, the statements of the non-testifying complainant. We disagree. The record shows that the statements were not admitted for the truth of the matter asserted. Rather, Oquist referenced the two calls she received from the complainant to explain why she went to Burth's property to investigate. Testimony about another's statements that provide context for the witness's knowledge and conduct is a proper "non-truth purpose." *Id.* at 552-53. And the limited role the statements played at trial, coupled with the overwhelming evidence against Burth, persuades us that the guilty verdict was "surely unattributable" to their admission. *See id.* at 555.

**Zoning Evidence**

Burth next challenges the admission of testimony that she violated the applicable zoning code by having too many horses for the size of her property, arguing that it is irrelevant. Burth objected to the testimony at trial as stating a legal conclusion but did not contend that it was irrelevant. "A defendant's objection to the admission of evidence preserves review only for the stated basis for the objection or a basis apparent from the context of the objection." *State v. Vasquez*, 912 N.W.2d 642, 649 (Minn. 2018). Because Burth did not make a relevance objection, we review only for plain error, under which

Burth must show error that was plain and affected her substantial rights. *Fraga*, 898 N.W.2d at 277.

She has not met that standard. The record shows that if horses lack sufficient pasture to graze on—whether due to its size, poor maintenance, inclement weather, or some combination of causes—the horses must have alternative food sources. Because the zoning code bears on the appropriate amount of grazing pasture for the horses, and therefore the amount of food available to them, the evidence is not plainly irrelevant. And as with other challenged evidence, it played a limited role in a trial that presented the jury with overwhelming evidence that the horses were deprived of necessary food and water, making any error in admitting the zoning testimony harmless.

**Prosecutorial Misconduct**

Burth argues that the prosecutor engaged in misconduct throughout trial, pointing to numerous aspects of the prosecutor's conduct to which she did not object. As with evidentiary issues, we review unobjected-to prosecutorial conduct only for plain error. *State v. Patzold*, 917 N.W.2d 798, 806 (Minn. App. 2018), *rev. denied* (Minn. Nov. 27, 2018). But we apply a "modified" plain-error standard under which the defendant must show that there was a plain error and, if they do so, the state must show that it did not affect the defendant's substantial rights. *Id.*

Burth first contends the prosecutor committed misconduct by eliciting testimony from Dr. Wiberg that Burth had canceled veterinary appointments for lack of funds, asserting that this is character evidence and hearsay. Both character evidence and hearsay are inadmissible. Minn. R. Evid. 404(b), 802. But evidence that Burth lacked the resources

to pay for veterinary care is not evidence of her character; it is evidence of her financial circumstances that bears on whether she was able to meet her obligation to provide the horses necessary food and shelter. *See Fraga*, 898 N.W.2d at 275 (concluding that evidence of defendant's financial resources was not character evidence but relevant to charge of child neglect). Nor is it hearsay; it is Burth's own statements offered as evidence against her. Minn. R. Evid. 801(d)(2).

Second, Burth argues that the prosecutor committed misconduct during closing argument by (1) aligning herself with the jury—against Burth—by using the pronoun "we"; (2) inflaming the jury's passions with sympathetic descriptions of the horses' condition, dependence, and prospects; (3) vouching for the credibility of the state's witnesses; (4) misstating testimony about Burth rescuing too many horses, Burth's ability to get hay for the horses, and the defense expert's website promising "results"; (5) implying that Burth had a burden of proof by noting that Burth's husband testified about regular hay purchases and questioning where all of the hay was; and (6) demeaning the defense expert by noting that he is a professional witness who is paid for his testimony.

When analyzing a claim of prosecutorial misconduct during closing argument, we consider the argument "as a whole," not "selected phrases and remarks." *State v. Smith*, 876 N.W.2d 310, 335 (Minn. 2016) (quotation omitted). The argument "need not be colorless, so long as it is based on the evidence or reasonable inferences from that evidence." *State v. Jones*, 753 N.W.2d 677, 691-92 (Minn. 2008). Based on our careful review of the prosecutor's entire closing argument, we conclude that none of the challenged remarks amount to plain error. Without using inflammatory or exclusionary language, the

10

prosecutor accurately described the evidence, proposed reasonable inferences the jury could draw from it, and suggested reasons to credit or discredit witnesses.  Accordingly, Burth's claim of plain error in the prosecutor's closing argument fails.

**Mistrial**

Finally, Burth argues that the district court abused its discretion by denying her motion for a mistrial based on the prosecutor's reference during closing argument to Burth possessing more horses than the zoning code permits.  "We review the denial of a motion for a mistrial for an abuse of discretion because the district court is in the best position to evaluate the prejudicial impact, if any, of an event occurring during the trial."  *State v. Bahtuoh*, 840 N.W.2d 804, 819 (Minn. 2013).  A district court should not grant a mistrial unless "there is a reasonable probability that the outcome of the trial would be different." *State v. Chavez-Nelson*, 882 N.W.2d 579, 590 (Minn. 2016).

In the challenged portion of her closing argument, the prosecutor referenced testimony about the size of Burth's property, the number of horses on it, and how that comported with zoning limits—all of which was admitted either without objection or over a limited objection that it involved a legal conclusion.  The prosecutor did not argue that Burth violated the zoning code.  She argued only that, given the size of Burth's property, "[t]he maximum amount of horses that could live and eat that grass would be 9."  We see no impropriety in this reference because it pertained directly to the food-deprivation charge.  And we are not persuaded—for the reasons discussed above—that there is a reasonable probability that granting a mistrial and retrying the case would yield a different

11

outcome. On this record, we discern no abuse of discretion in the district court's denial of Burth's motion for a mistrial.

**Affirmed.**