*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0912**

State of Minnesota,
Respondent,

vs.

Shawn Eric Clement,
Appellant.

**Filed April 22, 2024**
**Affirmed**
**Reyes, Judge**

Olmsted County District Court
File No. 55-CR-22-1402

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James E. Haase, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrew J. Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Reyes, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Appellant challenges his conviction of felony theft, arguing that (1) the state failed to present sufficient evidence to sustain his conviction and (2) the prosecutor's misconduct deprived him of his right to a fair trial. We affirm.

**FACTS**

In October 2021, law enforcement responded to reports that someone had stolen the catalytic converters from several vehicles at two RV dealerships. Suspicion fell on appellant Shawn Eric Clement after investigators discovered a cell phone beneath one of the affected vehicles that contained photos of appellant with his child. After further investigation uncovered additional evidence linking appellant to the phone and the thefts, respondent State of Minnesota charged appellant with felony theft, in violation of Minn. Stat. § 609.52, subd.2(a)(1) (2020).

At trial, the state presented evidence that appellant owned the cell phone discovered at the crime scene and that he was actively involved in the illegal sale of catalytic converters. The defense conceded that appellant owned the phone but argued that someone else left it at the crime scene. Appellant testified that he had a business in which he lawfully bought and sold catalytic converters and that he supplemented his income by renting his personal trucks. According to appellant, whenever someone rented a truck, he would send the phone with the renter. However, appellant testified that he could not recall if anyone rented a truck on the night of the thefts. Additionally, when asked to whom he loaned the phone on the night of the charged theft, appellant replied, "I didn't loan it to nobody." The jury found appellant guilty of felony theft, and the district court sentenced him to 23 months' imprisonment.

This appeal follows.

**DECISION**

**I. The state presented sufficient evidence to sustain appellant's conviction.**

Appellant asserts that the state failed to present sufficient evidence to sustain his conviction of felony theft because the circumstances proved at trial support the alternative hypothesis that a different perpetrator committed the thefts. We disagree.

When considering insufficient-evidence claims, appellate courts examine the record to determine whether the evidence, when viewed in the light most favorable to the conviction, reasonably supports the verdict. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004). Evidence is sufficient to support a guilty verdict if a factfinder could reasonably find that the defendant committed the charged offense. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012).

Because there were no eyewitnesses to the thefts, the state relied on circumstantial evidence to prove that appellant stole the catalytic converters. Appellate courts review convictions based on circumstantial evidence in two steps. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, the appellate court identifies the circumstances proved, deferring to the jury's acceptance of the state's proof of those circumstances and rejecting any contrary evidence. *Id.* at 598-99. Next, the appellate court independently examines "the reasonableness of all inferences that might be drawn from the circumstances proved." *Id.* at 599 (quotation omitted). To sustain the conviction, the circumstances proved must be consistent with the hypothesis that the accused is guilty and inconsistent with any other "rational hypothesis." *Id.* (quotation omitted). To constitute a "rational" alternative hypothesis, appellant must rely on more than mere conjecture or the possibility of his

innocence. *State v. Tscheu*, 758 N.W.2d 849, 861 (Minn. 2008). Instead, he must point to circumstances proved that are consistent with his innocence. *Id.* at 858.

The circumstances proved here include that: (1) law enforcement investigated reports of catalytic-converter thefts from vehicles at two neighboring RV dealerships; (2) at one of the dealerships, they discovered a cell phone near a Sawzall blade underneath one of the vehicles missing its catalytic converter; (3) the cell phone contained photos of appellant and his son; (4) video surveillance showed appellant's girlfriend purchasing the phone three days before the thefts occurred; (5) appellant admitted that he owned the cell phone recovered at the scene; (6) appellant's phone contained the number of a suspected catalytic-converter thief; (7) appellant attempted to sell catalytic converters to the owner of a local recycling center by sending pictures of cut converters from his cell phone; (8) investigators found several cut catalytic converters in appellant's storage unit that did not belong to the vehicles from the dealerships; (9) appellant offered to provide law enforcement with information about individuals who were paying cash for catalytic converters; (10) appellant admitted to selling other catalytic converters to an individual for $100,000; and (11) appellant's girlfriend sent a text message to appellant's phone at 2:39 a.m. on the night of the thefts stating that she fell asleep and asking if everything was okay. These circumstances proved are sufficient to support the jury's guilty verdict.

Appellant contends that the circumstances proved also support his alternative-perpetrator hypothesis based on his own testimony that he operates a legitimate scrapping business and supplements that business by renting his trucks, and that whenever someone rents a truck, he sends his phone with the renter. However, these are not part of the

circumstances proved. We must assume that the jury rejected any portion of appellant's testimony that contradicts the circumstances proved by the state. *State v. Jackson*, 741 N.W.2d 146, 154 (Minn. App. 2007), *rev. denied* (Minn. Oct. 21, 2008). We conclude that the circumstances proved support only the hypothesis that appellant committed the thefts.

## II. The prosecutor did not commit misconduct warranting a new trial.

Appellant contends that the prosecutor committed misconduct by (1) eliciting testimony from detective McCormick that appellant was "in jail" during his interview with investigators; (2) eliciting testimony from McCormick that he recognized appellant from prior contacts; (3) improperly aligning himself with the jury by using a "we" statement during closing arguments; and (4) misstating appellant's testimony during his closing argument. At trial, appellant only objected to the testimony about his being "in jail."

A prosecutor engages in misconduct by either violating established standards of conduct or caselaw. *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008). Appellate courts review objected-to prosecutorial misconduct under a two-tiered harmless-error test. *State v. McDaniel*, 777 N.W.2d 739, 749 (Minn. 2010). In cases involving "less serious" misconduct, the misconduct is not prejudicial unless it is likely that it played a substantial part in influencing the jury to convict. *Id.* For claims alleging "more serious" misconduct, appellate courts "have reversed unless the misconduct is harmless beyond a reasonable doubt." *Id.*

When a criminal defendant does not object to alleged prosecutorial misconduct, appellate courts apply a modified plain-error test "under which the defendant has the burden to demonstrate that the misconduct constitutes (1) error, (2) that was plain." *State*

*v. Portillo*, 998 N.W.2d 242, 248 (Minn. 2023) (quotation omitted). Errors are "plain" if they are clear or obvious, which means it contradicts caselaw, a court rule, or a standard of conduct. *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017). If the defendant establishes error that is plain, then the burden "shifts to the [s]tate to demonstrate that the error did not affect the defendant's substantial rights" by significantly impacting the jury's verdict. *Portillo*, 998 N.W.2d at 251 (quotation omitted). If the state fails to meet their burden on the third element, appellate courts assess whether the error compromises the fairness and integrity of judicial proceedings, focusing on whether the error would have widespread ramifications affecting the public's trust in the judicial system. *Id.* at 248.

    **A.    The prosecutor did not commit misconduct regarding detective McCormick's testimony.**

Appellant relies on the following exchanges to support his claim that the prosecutor committed misconduct by failing to prepare detective McCormick to avoid providing prejudicial testimony:

> State: Have you ever spoken to Mr. Clement about the allegations in this case?
> Detective McCormick: Yes.
> State: Under what circumstances?
> Detective McCormick: I spoke to him when he was in jail.
>
> State: And that's one reason why you recognize [appellant, appellant's girlfriend, and appellant's son]. Is that right? You've had contact.
> Detective McCormick: Yes.

We are not persuaded.

The state has a duty to prepare its witnesses to avoid prejudicial statements, and improper testimony by a state's witness may be considered prosecutorial misconduct

6

justifying reversal. *State v. Patzold*, 917 N.W.2d 798, 807 (Minn. App. 2018), *rev. denied* (Minn. Nov. 27, 2018). This court has stated that it is "much more likely to find prejudicial misconduct when the state intentionally elicits impermissible testimony." *Id.* (quotation omitted). Conversely, neither "[u]nintended responses under unplanned circumstances" nor "brief" and "unsolicited" inadmissible statements constitute prosecutorial misconduct. *Id.* (quotation omitted).

We conclude that, even under the more stringent harmless-error standard, the challenged exchange does not constitute reversible prosecutorial misconduct.[1] There is no evidence that the prosecutor's question was "intentionally" designed to elicit impermissible testimony regarding appellant's incarceration. *Patzold*, 917 N.W.2d at 807. Additionally, McCormick's testimony was brief, did not provide persuasive evidence that appellant committed the charged crime, and the district court immediately instructed the jury to disregard the testimony, all of which weigh against reversal. *Id.*; *State v. Wren*, 738 N.W.2d 378, 394 (Minn. 2007) (concluding that, because prosecutor's objectionable question to detective was brief and did not pertain to central issues at trial, it was harmless beyond a reasonable doubt); *Bauer*, 776 N.W.2d at 472 (concluding that, because juries are presumed to abide by instructions to disregard statements, appellant's claim of reversible error based on prosecutorial misconduct was unavailing). Any potential misconduct

---

[1] The Minnesota Supreme Court has questioned the viability of the distinction between "less serious" and "more serious" misconduct. *See State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) ("Because we conclude that the one instance of objected-to prosecutorial misconduct here is harmless even under the standard for more serious conduct, we do not reach the issue of the continued applicability of the [two-tiered harmless-error] test to objected-to prosecutorial misconduct.").

emanating from the challenged exchange was therefore harmless beyond a reasonable doubt and does not require reversal. *McDaniel*, 777 N.W.2d at 749.

Appellant next contends that the prosecutor committed misconduct by eliciting testimony that McCormick recognized appellant from prior contacts. Because appellant did not object to that exchange at trial, we review his challenge under the modified plain-error test. *Portillo*, 998 N.W.2d at 248. "Eliciting an officer's testimony that [they] know[] the defendant from prior contacts is error if the defendant's identity is not an issue in the case." *State v. Valentine*, 787 N.W.2d 630, 641 (Minn. App. 2010), *rev. denied* (Minn. Nov. 16, 2010).

Here, identity was an issue at appellant's trial based on his alternative-perpetrator theory. The detective's testimony established how he recognized appellant from the photos on the phone left at the crime scene, thereby connecting appellant with both the phone and the crime itself. Because the detective offered testimony about his prior contacts with appellant for the permissible purpose of establishing identity, we conclude that the prosecutor did not err by inquiring about how the detective recognized appellant. We therefore do not address the other elements of the plain-error standard. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012) (stating that if one prong of plain-error standard is not met, appellate courts need not analyze remaining prongs).

**B.     The prosecutor's statements during closing argument did not constitute prejudicial misconduct under the modified plain-error test.**

Appellant argues that the prosecutor committed misconduct during his closing argument by (1) improperly using a "we" statement to align himself with the jury and

(2) mischaracterizing appellant's testimony regarding whether he had his cell phone on the night of the thefts. We are not convinced.

Because appellant did not object to the prosecutor's closing statement, this court reviews appellant's claim under the modified plain-error test. *Portillo*, 998 N.W.2d at 248. When reviewing claims of prosecutorial misconduct arising out of a closing argument, this court considers the closing argument as a whole rather than focusing on selective phrases or remarks. *State v. Chauvin*, 989 N.W.2d 1, 34 (Minn. App. 2023), *rev. denied* (Minn. July 18, 2023).

During closing, the prosecutor remarked: "So how did his cell phone get there? Well, I think *we* know how his cell phone got there. He dropped it." (Emphasis added). Prosecutors are not members of the jury, and therefore the use of "we" is "inappropriate and may be an effort to appeal to the jury's passions." *State v. Mayhorn*, 720 N.W.2d 776, 790 (Minn. 2006). However, "we" statements are permissible when they are used to reiterate the evidence and do not "necessarily exclude the defendant." *Nunn v. State*, 753 N.W.2d 657, 663 (Minn. 2008). We conclude that the prosecutor's "we" statement was plain error because in this context, "we" cannot be reasonably interpreted to include the defendant. *Contra id.* at 662-63.

To determine if the prosecutor's error affected appellant's substantial rights, appellate courts examine factors including the pervasiveness of the misconduct and the strength of the remaining evidence. *State v. Parker*, 901 N.W.2d 917, 926 (Minn. 2017). Here, the "we" statement is not pervasive misconduct, but an isolated remark offered as part of a lengthy closing argument during a two-day trial. Furthermore, the state's evidence

9

against appellant was strong, and the statement was likely insignificant to the jury's verdict. We therefore conclude that, when considering the prosecutor's closing argument as a whole, the "we" statement did not affect appellant's substantial rights.

We are similarly unpersuaded by appellant's assertion that the prosecutor's closing argument prejudicially misstated his trial testimony. Although prosecutors may not "intentionally misstate the evidence," they may present "all legitimate arguments on the evidence and all proper inferences that can be drawn from that evidence." *State v. German*, 929 N.W.2d 466, 476 (Minn. App. 2019) (quotation omitted).

Here, the prosecutor repeatedly argued during closing that appellant must have had his phone during the thefts because he admitted to owning the phone, testified that he did not loan the phone to anybody, and could not recall if he had rented his truck on the night of the thefts. Appellant asserts that these arguments misstated his testimony that he always sent the phone with customers who rented his trucks and that, although he could not remember whether he rented his truck on the night of the thefts, the cell phone must have been placed at the scene by one of his renters. We disagree.

Appellant testified that (1) he owned the phone discovered at the crime scene; (2) he "didn't loan [the phone] to nobody;" and (3) he could not recall where he was on the night in question, if he had rented his truck on the night of the thefts, or when he last had his phone. Based on appellant's testimony, it was reasonable for the prosecutor to argue the inference that, if appellant owned the phone discovered at the crime scene and could not

10

recall whether he loaned a truck on the night of the thefts, then he was the one who left the phone at the crime scene. *See German*, 929 N.W.2d at 476.

**Affirmed.**